JOHN KENLEY *et al.*

*v.*

DANIEL S. BRYAN.

*Filed at Mt. Vernon September 27, 1884.*

1. DECREE—*bill to review and impeach.* A decree of a court can not be impeached or reviewed except for fraud or error.

2. ADMINISTRATION—*sale of land to pay debts—subject to incumbrance.* The county court has the jurisdiction and power to order the sale of real estate of a decedent, when necessary, to pay debts of the estate, notwithstanding the same may be incumbered by a mortgage; and there is no error in directing the sale to be made subject to the mortgage. So an estate in remainder may be sold subject to the prior life estate.

3. SAME—*sale of real estate subject to dower.* On application by an administrator for a decree to sell real estate to pay debts, the county court has jurisdiction to order the assignment of dower and homestead to the widow of the intestate, and may properly direct the sale of the portion set off as dower, subject to the widow's life estate.

4. SAME—*sale to widow in payment of her specific allowance, not fraudulent.* The sale of land assigned to the widow of an intestate by an administrator, to her, subject to the dower and homestead estate, she being the highest bidder, can not be impeached for fraud merely from the fact that she paid no cash, but gave her receipt to the administrator for the amount of her bid, against her specific allowance. Her receipt operated to release the estate of so much indebtedness.

5. SAME—*fraudulent combination.* At an administrator's sale of lands an eighty-acre tract was struck off to a bidder for $250, subject to a mortgage and taxes, amounting to $350, the land not being worth more than from $600

to $800. The purchaser failing to take the land, the husband of the widow of the intestate agreed to take the land at the bid, when the administrator conveyed to the bidder, and he quitclaimed to the other party, who paid the bid and discharged the incumbrances: *Held,* that these facts did not even tend to show a fraudulent combination to obtain the property at a sacrifice.

6. SAME—*remedy to impeach sale of land en masse.* If two separate and distinct tracts of land are sold by an administrator as a whole, without first offering them separately, such fact affords a ground of exception to the report of sale, but not for impeaching the sale years afterwards by a bill in chancery. The remedy in such case is by motion to set aside the sale before its confirmation.

7. HOMESTEAD—*of a reassignment on change of value.* The administrator of an estate filed his petition in the county court for an assignment to the widow of the intestate, of dower and homestead in the lands of the estate, and for an order of sale of the residue for the payment of debts. A decree was entered accordingly. Subsequently the heirs exhibited their bill in chancery to impeach that decree, or rather the sale made by the administrator under it, for fraud, and among other things prayed for a reassignment of the homestead. It was considered there was no case made for such reassignment, even if that might be done. If, because the land assigned for homestead has increased in value, a new assignment may be had to reduce the quantity, it would seem that when it has depreciated in value, for the same reason a new assignment might be had to increase the quantity.

APPEAL from the Circuit Court of Clay county; the Hon. WILLIAM C. JONES, Judge, presiding.

Messrs. COPE & CHESLEY, for the appellants:

If an administrator's deed may be attacked in the circuit court, it must be by bill to remove a cloud upon title, and on the ground that the sale is absolutely void. The decree and subsequent orders of the county court can not be attacked collaterally.

A bill of review, or a bill to impeach a decree for fraud, or any bill by which it is sought to suspend, modify or set aside a decree or order of court, must be brought in the court where such decree was rendered. After a hearing in one court, a party may have further remedy by appeal or writ of error,

or bill of review, etc., but he is not permitted to change the venue to another forum. The county court having full concurrent jurisdiction with the circuit court in all matters relating to the settlement of estates, this rule applies to the orders of the county court. *Moffit* v. *Moffit*, 69 Ill. 641; *Bostwick* v. *Skinner*, 80 id. 147; *Housh* v. *People*, 66 id. 178; *Von Heller* v. *Johnson*, 57 id. 109; *Cox* v. *Garst*, 105 id. 343.

As to inadequacy of price, see *Allen* v. *Shepard*, 87 Ill. 315.

Messrs. COCKRELL & MONROE, for the appellee:

A homestead is not liable to sale, directly or indirectly. It is exempt for all purposes. It can not be sold subject to such interest. *Hartman* v. *Schultz*, 101 Ill. 437.

A bill of review is a chancery proceeding, and county courts do not have general chancery powers. The county court can not adjudicate an adverse title, consequently a bill of review in the county court can not reach and cancel deeds, and for this reason can not furnish an adequate remedy.

A bill of review can only be filed for error of law and newly discovered evidence. Error of law must be such as arises from mistake or inadvertence, and not from error in the judgment of the court. *Callen* v. *Shields*, 2 Stew. & Port. 417; *Younge* v. *Forgey*, 4 Heyw. 189.

It is said that complainant, and all others interested, being parties to the proceedings in the county court, can not and could not have any remedy except by appeal or writ of error. Where a decree or sale is void, the party whose rights are sought to be affected need not appeal, but he may treat the proceeding as a nullity, and file his bill to set aside such sale as a cloud upon his title. In such case he may attack the sale or proceeding collaterally, and is not bound to take an appeal or prosecute a writ of error in order to protect his rights.

There was no necessity to sell the land subject to the homestead of the widow, nor could it be sold in that way.

To sanction such sales would be to open up.a lottery in real estate, and lead to the sacrifice of many valuable estates, as has been the case here.

The title to the eighty-acre tract never vested in Williams, for the reason he refused to comply with the terms of the sale,—consequently the deeds to him, and from him to Ogden, and from Ogden to Henry Kenley, are all void, and no money was paid by the widow on her purchase, though the sale was ordered for cash.

We do not think that homesteads, after fair assignments have been made, can be reassigned accordingly as the land increases or decreases in value; but we do think that a re-assignment should be made where it appears that an unreasonable amount has been set off.

Mr. Justice Walker delivered the opinion of the Court:

It appears that in February, 1878, Abijah S. Bryan, of Clay county, departed this life intestate, leaving a widow and a number of children as his heirs. He died seized of several tracts of land named in the bill. A portion of the property was free from incumbrance, but eighty acres, consisting of two forty-acre tracts adjoining, but in different sections in the same township, was incumbered by a mortgage for $300. Mary E. Bryan, a daughter, and Henry Johnson, and the other heirs, were minors, except Daniel S. Bryan, at the time of filing the bill. The widow married one Isaac D. Ogden, by whom she had one child, also a minor. John Kenley, a brother of the widow, at the February term, 1878, of the county court, was appointed administrator of the estate, and qualified, and entered upon the duties of the office. At the February term of the county court, 1879, Kenley, as administrator, filed a petition asking for the assignment of dower and homestead to the widow, and for an order for the sale of the remainder of the real estate for the payment of debts

owing by the estate.  It appears from the decree of the county
court, that homestead and dower were assigned to the widow
of one hundred and six and two-thirds acres out of two hun-
dred acres owned by deceased at the time of his death, and
the court decreed that all or so much of the remaining lands
as might be necessary be sold for the payment of debts, and
also decreed a sale of the land assigned as dower and home-
stead subject to those interests.  The administrator adver-
tised and sold the land subject to dower and homestead, and
the widow became the purchaser at $200, and he executed
to her a deed for the property.  The widow subsequently
departed this life, leaving surviving her husband, and one
child by that marriage.  Mary E. Johnson and her husband
reside on the homestead, and a minor brother and sister also
reside with them.  When the administrator offered the eighty
acres incumbered by the mortgage, one B. H. Williams bid it
off at $250, subject to the mortgage,—and it is charged this
was done with a secret understanding as to its future dispo-
sition.  The administrator reported the sale to the county
court, and it was approved.  It is charged that Williams paid
no consideration, but receipts of the widow on her specific
award were fraudulently used in such payment; that Wil-
liams, without consideration, quitclaimed the land to Ogden,
and he and wife, without consideration, quitclaimed to Henry
Kenley, or to one of two other persons named in the bill;
that Kenley has paid the mortgage, and is in possession of
the land and in the receipt of the rents and profits without
having paid anything on it but the amount of the mortgage;
that this land was worth $800, and that by the combination
charged, the creditors and heirs have been defrauded; that
the debts against the estate, over and above the widow's
award, amounted to between $300 and $400, which have not
been paid.  The bill prays that the cause be reviewed and
the decree of the county court set aside, and the sales by the
administrator, and all conveyances subsequent thereto, be

cancelled and set aside, and commissioners appointed to re-assign homestead, and for an account of rents and profits, etc. Answers were filed denying all fraud, and insisting that the entire transaction was fair and legal in all its parts. It is denied that Henry Kenley had any connection whatever with the administrator's sale, but purchased the eighty-acre tract from Ogden for $800, which he has paid. On a hearing on bill, answers, replications and proofs, the court decreed the relief sought, except a reassignment of homestead was denied. Defendants appeal to this court, and assign various errors, and appellee assigns cross-errors that the court refused to set aside the assignment of homestead, and to reassign the same.

Whilst the bill is called a bill of review, from its form and scope it is in substance a bill to impeach a decree, or, rather, a sale under it, for fraud, and we shall consider it such.

Is there any fraud proved as alleged in the bill, to sustain the decree? We think not. There is no pretence that Bryan did not die intestate, seized of the real estate ordered to be sold to pay his debts. He was indebted at the time of his death, and the debts largely exceeded the personal assets of his estate. This required the county court to render the decree for the sale of the lands. The decree was therefore proper for the purposes for which it was filed. It can not be impeached for want of jurisdiction, because the county court had jurisdiction, both over the subject matter and the persons of the parties, except it could not order the sale of the portion of land set off to the widow for homestead. All understand that a decree can not be impeached or reviewed unless fraud, or error, at least, is shown. The county court had jurisdiction to order the assignment of dower and homestead, and the allegations in the petition, and the proofs, clearly showed the widow was entitled to both. Nor is there any allegation in this bill that there was any fraud in obtaining the decree, or that there was the slightest evidence then

existing that is newly discovered, that will disprove a single fact necessary to sustain the decree. It then irresistibly follows, that there is no ground for reviewing and reversing this portion of the decree, even if such a bill will lie.

The court undeniably had the jurisdiction and power to decree a sale of the eighty acres, subject to the mortgage. We are not aware that any court has ever held, since real estate has been subjected to sale under execution, that land subject to a mortgage, a life estate, or a remainder, may not be thus sold; and the 10th section of the statute in reference to judgments and decrees provides that the lands, tenements and real estate of the defendant may be sold under execution, and the 3d section defines the term "real estate" to include lands, tenements, hereditaments, and all legal and equitable rights and interests therein and thereto, etc. The 97th section of the chapter entitled "Administration of Estates," authorizes the sale of the "real estate" of a deceased person to pay his debts where the personal assets are insufficient for the purpose. The 107th section authorizes the court to decree the sale of so much of the "real estate" as may be necessary to pay debts which can not be paid by the personal property. This is clearly broad enough to embrace the remainder after the termination of a life estate of a dowress. The manifest intention of the statute is, that when necessary, all of the real estate which was held by deceased, and every kind of interest therein, shall be subjected to sale for the payment of his debts. It may be that the uncertainty of the time when the estate will commence may depress the price, but no more so than the sale of the remainder after a life estate is spent, under an execution. In some cases the purchaser of the remainder may come into possession within a short period, and in others the period may be of great length; but this uncertainty is not a reason why creditors should not be paid their debts from the proceeds of such sales. It would be highly unjust to fail to subject such an estate or interest in

real estate to sale for the payment of debts, because it may be sacrificed, and leave the heirs owners of the remainder, and leave the creditors unpaid. Such an unjust purpose could never have actuated the legislature in providing for the sale of the real estate to pay debts of the estate. We can attribute no such purpose until it shall be so provided. There was therefore no error in decreeing the sale of the land assigned to the widow as dower, subject to that estate. To deny the power is to perpetrate a wrong and injustice on creditors that would be unjust and inequitable in a high degree. There is no error in law in that portion of the decree, as it conforms strictly to the law.

The bill, and the evidence under it, fail to disclose any ground for impeaching the decree for fraud in obtaining it. There was regular service, and sufficient legitimate proof to require its rendition. Nor is there the slightest fraud endeavored to be shown in anything that was done before it was rendered. There is therefore no pretence for impeaching it on that ground. It is true the bill charges that the administrator conducted the sale fraudulently, but no facts are specified as constituting fraud, nor do we regard the evidence as establishing fraud. Mrs. Bryan was the highest bidder for the land sold, subject to dower and homestead. It is true she did not count out the actual cash in paying for it, but she receipted for the amount of her bid, to be retained by the administrator out of her separate allowance which the estate owed to her. This operated to relieve the estate of so much debt, and was a full, fair and legal discharge of the estate of that amount of indebtedness, and we are wholly unable to perceive the slightest fraud in the transaction.

As to the eighty acres, it was apparently sold for the highest price that could be obtained. Williams bid, and the land was stricken off to him for $250, subject to a mortgage debt, taxes and interest, which, when paid, was $350. This was within $100 or $200 of the highest value placed on it,—

and Henry Kenley paid $800 for it, which was, from the evidence, all it was worth.

The evidence signally fails to establish any kind of fraud or combination to depress the price, or to accomplish any purpose but to obtain the best price attainable. There is no witness who says he would have given more, or that it was worth more than the price for which it sold, subject to the incumbrances. Williams and the administrator both deny there was any arrangement in reference to the amount he bid, or that it was for any other person. After bidding it off he failed to take it, and Ogden being willing to take it at the bid, a deed was made to Williams, who conveyed to Ogden. This is not unusual, nor does it tend to prove a fraudulent combination. There had been a previous sale, when the eighty acres was struck off to a bidder at $150, subject to the mortgage, but he refused to go on with the purchase, because he alleged the land was too high. We fail to find any fraud, nor is there any proof that there was any sacrifice in the prices paid.

The evidence fails to show that the property subject to dower and homestead was first offered and sold *en masse*, but the evidence shows that it was offered in separate tracts, and not being sold, it was then offered and sold as a whole tract; but if it had been, that would have been ground of exception to the administrator's report, but is not ground for impeaching the sale years afterwards by a bill in chancery. The cases of *Noyes* v. *True*, 23 Ill. 503, *Ross* v. *Mead*, 5 Gilm. 171, *Gillespie* v. *Smith*, 29 Ill. 473, and *Prather* v. *Hill*, 36 id. 402, show that parties to obtain relief by bill to set aside sales of several tracts as a whole, must have objected on motion to set aside a sale, before the sale is confirmed. Here relief, if entitled to any, could have been had on exceptions to the administrator's report.

The evidence fails to establish that the property was sold at a great, if any, sacrifice. Nor has a case been made for a

reassignment of homestead, even if that may be done. If because the land assigned for homestead should rise in value, a new assignment should be had to reduce the quantity, it would seem that when it depreciates in value, for the same reason a new assignment should be had to increase the quantity.

The decree of the court below is reversed, and the cause remanded.             *Decree reversed.*