HARVEY H. ATHERTON, Admr., Defendant in Error, *vs.* HARRY W. HUGHES· *et al.* Plaintiffs in Error.

*Opinion filed February 25, 1911—Rehearing denied April 5, 1911.*

1. EXECUTORS AND ADMINISTRATORS—*mere approval of a report does not work discharge of administrator nor settle estate.* The mere approval by the county court of an administrator's report of a sale to pay debts does not work the discharge of the administrator nor settle the estate.

2. SAME—*when administrator de bonis non may petition to sell land to pay unsatisfied claims.* Where the amount realized from an administrator's sale is not sufficient to satisfy the debts of the estate, it is the duty of such administrator, when more land of the estate becomes subject to sale through the termination of the widow's homestead, to petition the court to sell such land to pay the unsatisfied claims which have been probated against the estate, and if the administrator has died his duty may be performed by an administrator *de bonis non.*

3. SAME—*land occupied as a homestead may be sold for debts after homestead estate is extinguished.* Where the widow is in possession of a tract of land as a homestead which is not worth more than $1000 the tract cannot be sold to pay debts of the estate until the homestead estate is extinguished, and holders of unsatisfied claims which have been probated against the estate may wait until the homestead estate is extinguished before applying for a sale of the land, where there is no other means of satisfying such claims.

4. SAME—*when no allotment of homestead is necessary.* Where the twenty-acre tract of land occupied by a householder as a homestead is not worth more than $1000 at the time of his death and is separated by a highway from the remainder of the eighty acres of which it is a part, the widow may, by arrangement with the heirs, occupy such twenty-acre tract as her homestead, and no formal allotment or assignment thereof to her as a homestead is necessary to protect it from sale to pay debts of the estate.

5. SAME—*effect where tract occupied as a homestead increases in value.* Where the boundaries of the premises occupied by the widow as a homestead are once fixed her homestead estate is not affected by the decrease or increase in value of the premises, and the fact that the tract of land so occupied, which at the death of the householder did not exceed the value of $1000, increases in value beyond that amount, does not authorize creditors of the estate to enforce their claims out of the excess nor bar their right

to enforce them by a sale of the premises after the homestead estate is extinguished.

6. SAME—*there is no fixed time for proceeding to sell land to pay debts after homestead estate is extinguished.* The courts can not lay down an inflexible rule fixing the time, after the extinguishment of the homestead estate, within which an application must be made to sell the homestead premises to pay unsatisfied claims, but each case must rest largely upon its own facts.

7. SAME—*when validity of claims is res judicata on application for second sale.* Upon application by an administrator *de bonis non* to sell homestead premises after the extinguishment of the homestead estate to pay claims unsatisfied after the administrator's first sale, the question of the validity of claims which were probated on the adjustment day and adjudicated upon in the first proceeding to sell land is *res judicata.*

8. SAME—*application to sell real estate is not a collateral proceeding as against the heir.* An application by an administrator *de bonis non* to sell land to pay claims which were unsatisfied by a sale of a former administrator is not a collateral proceeding as against the heir, and such an application can only be sustained where it appears that there are existing debts against the estate.

9. SAME—*when prima facie case made by production of judgment is not established.* Where an administrator *de bonis non* relies, in part, upon judgments of the county court allowing claims after the adjustment day, under section 61 of the Administration act, to show the existence of the debts for which the sale of land is applied for, such judgments must show, on their face, that the county court had jurisdiction to render them; and if the alleged judgments do not amount, in law, to judgments, and the record fails to show that the administrator was before the court by service of summons or appearance when the claims were allowed, the *prima facie* case which is ordinarily made by the production of a judgment allowing a claim is not established.

10. SAME—*when it is presumed that an administrator sold decedent's equity of redemption, only.* Where, at the time of a sale by an administrator, the county court was without power to order the land sold disencumbered of mortgages thereon, the presumption is that the administrator sold only the interest of the decedent in the land and that he received the proceeds of the sale for the decedent's equity of redemption, and he has no right, in such case, to pay the mortgages with the proceeds of the sale.

11. SAME—*heir may defeat a further sale to make good a loss caused by administrator's mismanagement.* If an administrator has in his hands assets of the estate arising from personal property or from the sale of real estate sufficient to pay the indebtedness of

the estate and he commits a *devastavit* or so neglects or mismanages the estate that the fund is lost, the heir may defeat a further sale of land to make good the loss to creditors, and the remedy of such creditors is against the administrator or his bondsmen.

12. SAME—*approval of report wherein the administrator takes credit for improper claims does not bind the heir.* The fact that the county court approved an administrator's report of a sale of land in which he took credit for paying two mortgages on the land out of the proceeds of the sale, does not bind the heir in a subsequent proceeding for another sale to pay claims unsatisfied after the first sale, where the administrator was not authorized to sell the land free from the mortgages and made no representations at the sale that the mortgages would be paid from the proceeds. (*Millard* v. *Harris,* 119 Ill. 185, distinguished.)

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Fulton county; the Hon. ROBERT J. GRIER, Judge, presiding.

This was a petition filed March 13, 1909, by Harvey H. Atherton, as administrator *de bonis non* of the estate of William Hughes, deceased, in the circuit court of Fulton county, for an order to sell real estate to pay debts. An answer and replication were filed and·the cause was referred to a master to take the proofs and report his conclusions. The master took the proofs and filed a report recommending that the prayer of the petition be granted. The court, after overruling exceptions to said report, entered a decree substantially in accordance with the recommendations of the master, which decree has been affirmed by the Appellate Court for the Third District, and the cause has been removed into this court for further review by *certiorari.*

It appears from the pleadings, proofs and master's report that William Hughes departed this life, intestate, in Fulton county on July 18, 1878, leaving him surviving Hannah Hughes, his widow, and five children as his sole and only heirs-at-law; that he died possessed of personal property of the value of $1315, and was seized, at the time of

his death, of the west half of the south-west quarter and the west half of the north-west quarter of section 34, township 5, north, range 1, east, in Fulton county, Illinois; that Vincent M. Grewell, on August 13, 1878, was appointed administrator of the estate of said William Hughes, deceased, and qualified as such, and thereupon filed an inventory and appraisement of said estate; that at the November term, 1879, said Vincent M. Grewell presented his petition, as such administrator, to the county court of Fulton county for an order to sell real estate to pay debts, from which it appeared there was a deficiency of personal estate to pay the debts of said estate; that the county court entered an order authorizing and empowering said administrator to sell the west half of the north-west quarter and the south sixty acres of the west half of the south-west quarter of said section 34 to pay the debts of said estate; that said administrator advertised and sold said real estate, at which sale Hannah Hughes, the widow, purchased the west half of the north-west quarter of said section 34; that the sale was approved, and the administrator thereafter filed a report showing that he had paid all preferred claims against said estate in full, two mortgages,—one for $826.65 and one for $1312.50,—which were first liens upon said real estate, the costs and expenses of administration, and a dividend of twelve and one-half per cent upon the seventh-class claims allowed against said estate, and that the assets of said estate were exhausted, leaving debts of the seventh class unpaid, which report was approved; that said administrator died in 1902 without having taken any further action in said estate. It also appears that at the time of his death William Hughes and his family resided upon the north twenty-three acres of the west half of the south-west quarter of said section 34, which were then worth about $600, and that his widow, Hannah Hughes, continued to reside upon the said twenty-three acres up to the time of her death, on August 9, 1906. The fact that said twenty-three acres were

the homestead of Hannah Hughes is said by the attorney who represented the administrator in the settlement of said estate to be the reason said premises were not sold at administrator's sale with the other lands of William Hughes, in 1879. It also appears that at the time of the death of Hannah Hughes she owned the west half of the north-west quarter of said section 34, which adjoined said twenty-three acres on the north, and that her administrator sold, with the consent of her heirs, (who were also the heirs of William Hughes,) subsequent to her death, said one hundred and three acres, and some of plaintiffs in error became the purchasers of said one hundred and three acres, or parts thereof, and received deeds thereafter from the said heirs, while others of plaintiffs in error claim through such purchasers as mortgagees. It also appears that on March 12, 1907, one John Stracker, a creditor of William Hughes, whose claim had been probated as a seventh-class claim within two years from the appointment of said Vincent M. Grewell as administrator, and upon which only twelve and one-half per cent had been paid, filed a petition in the county court of Fulton county for the appointment of Harvey H. Atherton, the defendant in error, as administrator *de bonis non* of the estate of William Hughes, and that the said Atherton was appointed such administrator, upon said petition, by said county court, and that immediately after his appointment a petition was filed by him, as such administrator *de bonis non,* to sell the said twenty-three acres to pay the debts of the estate of William Hughes, deceased, to which petition all the heirs of William Hughes, and other persons who claimed any interest in said twenty-three acres, were made parties. The court found, in its decree, who were creditors of the estate of William Hughes, deceased, and the amount due each creditor, and ordered said twenty-three acres sold to satisfy said claims and costs.

MARVIN T. ROBISON, for plaintiffs in error.

249 — 21

LUCIEN GRAY, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

The first contention of the plaintiffs in error is that the defendant in error was not duly appointed administrator of the estate of William Hughes, deceased, and that he, for that reason, did not have the right to petition for the sale of said real estate, as it is said the estate of William Hughes, deceased, had been settled by the original administrator. We do not agree with this contention. If claims against said estate remained unpaid and there was real estate belonging to said estate which was (now that the widow was dead) liable to sale by the administrator of William Hughes, deceased, to pay debts, the court would have been authorized to appoint an administrator *de bonis non*. The approval of the report of Vincent M. Grewell as administrator of the estate of William Hughes, deceased, did not work his discharge as administrator or settle said estate, (*Blanchard* v. *Williamson*, 70 Ill. 647; *Cutright* v. *Stanford*, 81 id. 240; *Sutherland* v. *Harrison*, 86 id. 363; *Diversey* v. *Johnson*, 93 id. 547; *Starr* v. *Willoughby*, 218 id. 485; *Reizer* v. *Mertz*, 223 id. 555;) and had he been living at the date of the death of the widow and there were unpaid claims which had been probated against said estate, it would have been his duty to have obtained an order of court and sold said twenty-three acres and applied the proceeds in satisfaction of the probated claims against said estate, and as Vincent M. Grewell was dead and the estate remained unsettled, it was the duty of the county court of Fulton county, wherein said estate was pending, upon the petition of a creditor, to appoint an administrator *de bonis non* of the estate of William Hughes, deceased, to complete the settlement of said estate if there existed unpaid claims which had been probated against such estate. It has been held in a number of cases that when the widow of a decedent is in possession of premises as a homestead which do not exceed in value

$1000, the premises cannot be sold to pay debts until the termination of the homestead estate, and that the holder of unsatisfied claims may wait until the homestead estate is extinguished before applying for a sale of the property; and such property has been sold by order of court to pay debts when more than twenty years have elapsed since the claims were allowed. *Hartman* v. *Schultz,* 101 Ill. 437; *Oettinger* v. *Specht,* 162 id. 179; *Mueller* v. *Conrad,* 178 id. 276; *Hanna* v. *Palmer,* 194 id. 41.

It is next contended that the evidence shows the premises in controversy had increased in value and had been worth more than $1000 for several years prior to the death of Hannah Hughes, and by reason of those facts the creditors are said to be barred of the right to enforce their claims against said premises in excess of $1000. It is clear at the time of the death of William Hughes said twenty-three acres were not worth $1000, and at the time of the sale of the remainder of the land said premises, by some arrangement with the widow, were set off to her as her homestead and dower in the lands of her deceased husband. That arrangement was doubtless satisfactory to her and to all parties in interest, as it was not questioned during her lifetime and she remained in possession of said premises until her death. The fact that the land increased in value and ultimately became worth more than $1000 we do not think required the creditors to proceed, prior to the death of the widow, to sell the excess over $1000 in value of said land or lose their right to enforce their claims against such excess on the death of the widow. If that were the law, in case the value of lands covered by a homestead estate was advancing rapidly, numerous sales might be required of portions of the property prior to the extinguishment of the homestead estate, the result of which would be to defeat the purposes of the rule which exempts the fee from being sold from under the homestead to pay debts until the homestead estate is extinguished. In the late case of *Garwood*

v. *Garwood,* 244 Ill. 580, it was held that the right of homestead under the present statute is an estate in land, and where the homestead boundaries have once been fixed the estate is not affected by the enhancement or the depreciation of the land; that when the homestead occupied by the deceased at his death is of less value than $1000 it is not necessary that it be set off and assigned to the widow to entitle her to hold it against the heirs or creditors as a homestead. While the boundaries of the homestead in the lands of William Hughes were not fixed by order of court, the particular tract selected by William Hughes as his homestead, and which continued to be occupied by the widow as her homestead after his death, was severed from the balance of the eighty of which it formed a part, by a public highway, and was worth less at the date .of the husband's death than $1000. No allotment or assignment was therefore necessary. In *Kenley* v. *Bryan,* 110 Ill. 652, it was held that if, because the land assigned had increased in value, a new assignment may be had to reduce the quantity, then, when the land had depreciated in value, the same reason would require a new assignment to increase the quantity, and hence no re-assignment could be had.

It is also contended that the claimants are barred of their right to insist on said twenty-three acres being sold to pay their claims on the ground that they did not act with sufficient promptness upon the death of Hannah Hughes. In *Frier* v. *Lowe,* 232 Ill. 622, the widow died .in 1898, an administrator *de bonis non* was appointed in 1900, and the petition for an order of sale was filed in 1902 and a sale was ordered. In disposing of the contention that the claimants were barred by *laches,* it was said no inflexible rule could be adopted by the courts fixing a time, after the extinguishment of the homestead estate, in which an application to sell real estate to pay debts must be made but that each case must be largely controlled by its own circumstances. In this case about seven months intervened be-

tween the date of the death of the widow and the date of the filing of the petition by the administrator *de bonis non* for an order of sale. The records of the county court showed a large amount of probated claims against the estate of William Hughes, deceased, remained unpaid, and the land records of Fulton county showed the title to said twenty-three acres was in the name of William Hughes at the time of his death, and the purchasers of said premises took title thereto from the heirs of William Hughes, one purchaser being a son and the other a son-in-law of William Hughes. The claimants, subsequent to the death of Hannah Hughes, had done nothing to mislead the purchasers or to lead them into the belief that they did not intend to enforce their claims against said premises. In view of the decision announced in the *Frier case* and other kindred cases, we do not see how it can be held that the claimants were estopped, by a delay of seven months alone, to enforce their claims against said real estate.

It is further contended that the court erred in its determination of the claims which were entitled to be enforced against the real estate sought to be sold. These claims may logically be divided into three classes: First, the claims which were probated on the adjustment day and were adjudicated upon in the first proceeding to sell real estate to pay debts; second, the claims which were filed subsequent to the adjustment day but were allowed within two years from the day upon which the original administrator was appointed; and third, the two mortgages, aggregating the sum of $2139.15, which were paid by the original administrator out of the proceeds of the sale of the real estate without any order of court but which were included in his report and for which he was given credit on the approval of that report.

As to the first class, which aggregate the sum of $1578.10, less a dividend of twelve and one-half per cent, the adjudication upon the first application for the sale of

real estate is conclusive in this proceeding. In *Judd* v. *Ross,* 146 Ill. 40, in speaking of claims which were before the court on a former application, the court, on page 49, said: "The former proceeding was * * * between the same parties. The claims involved in that case and in this are the same. Their validity was passed upon and determined. * * * The question of the validity of the claims is therefore *res judicata."*

As to the second class of claims, which were four in number, one in favor of Phippin for $432.35, one in favor of Marshall for $1075.75, one in favor of Ewing for $605.50 and one in favor of Hellyer for $105.50, and which aggregate $2219.10, they were filed subsequent to the adjustment day but within the two years allowed for the presentation of claims and after the first order of sale of said real estate was entered. As to these claims the record does not show that a summons was issued and served upon the administrator or that he entered his appearance, and the record of the county court showing the allowance of these several claims is nothing more than such a memorandum as the judge of that court might well have made upon his docket from which the clerk of that court should subsequently have written up judgments, and does not, in law, amount to judgments upon the said claims. They are all substantially in the following form: "August 19, 1880; George Phippin *vs.* Estate Wm. Hughes, dec'd; allowed seventh class; $432.35." While a claim regularly probated against an estate is binding upon the administrator and heirs as against personal estate, on the application of an administrator to sell real estate the allowance of a claim in a case where the court has jurisdiction and where the claim has been regularly allowed is only *prima facie* evidence of the validity of such claim against the heir. (*Stone* v. *Wood,* 16 Ill. 177; *Hopkins* v. *McCann,* 19 id. 113; *Mason* v. *Bair,* 33 id. 194; *Rosenthal* v. *Renick,* 44 id. 202; *Goeppner* v. *Leitzelmann,* 98 id. 409.) Section 61

of the Administration act provides: "Whoever has a claim against an estate, and fails to present the same for adjustment at the term of court selected by the executor or administrator, may file a copy thereof with the clerk of the court; whereupon, unless the executor or administrator will waive the issuing of process, the clerk shall issue a summons, directed to the sheriff of the county, requiring such executor or administrator to appear and defend such claim at a term of the court therein specified, which summons, when served, shall be sufficient notice to the executor or administrator of the presentation of such claim." In *Hales* v. *Holland,* 92 Ill. 494, it was held that when a claim against an estate is presented to the county court for allowance after the time appointed by the executor or administrator for the adjustment of claims without having given notice thereof to the personal representative, as required by the statute, or the personal representative has not appeared and waived notice, the court will have no jurisdiction of the person of the executor or administrator, and any order made by the court relating to the claim without such jurisdiction will be a mere nullity and may be questioned even in a collateral proceeding. An application to sell real estate to pay debts can only be sustained when it appears that there are existing debts against the estate, and where, as here, the administrator relies upon judgments of the county court rendered upon claims filed after adjustment day to show the existence of such indebtedness, we take it that the judgments produced should be of a character which show, upon their face, that the county court had jurisdiction to render such judgments. This is not a collateral proceeding as against the heirs, and when it is made to appear from the records of the county court, as it does here, that the claims in part relied upon as the basis for an order of sale of real estate were presented subsequent to the day fixed by the administrator for the adjustment of claims, and it does not appear from the record that

the administrator was before the court by service of summons or by appearance at the time the claims were allowed, and a regular judgment has not been rendered upon the claims, the *prima facie* case which is ordinarily made by the production of a judgment allowing a claim against the heir is not established.

The third class is based upon two mortgages which were liens upon the real estate of William Hughes which was sold by the original administrator and which were paid by such administrator out of the proceeds arising from the sale of such real estate, apparently upon his own motion. The record of that proceeding, which is incorporated in this record, is entirely silent as to these mortgages. At the time of the first administrator's sale the county court was without power to order said real estate sold disencumbered of said mortgages. The presumption, therefore, is, that when said administrator sold said real estate he only sold the interest of William Hughes therein and that he received the proceeds of said sale for the equity of William Hughes' estate in said premises. He, therefore, had no right to appropriate a part of the proceeds of said sale to satisfy said mortgage indebtedness. The law is well settled that when an administrator has in his hands assets of his decedent arising from personal property or from the sale of real estate sufficient to pay the indebtedness of the estate, and he commits the *devastavit* or through his negligence or mismanagement of the estate the fund is lost, the heir may defeat, by reason of these facts, further resort to the sale of real estate to make good such loss, but the remedy of the creditors is against the administrator upon his bond. (Woerner's Am. Law of Administration, sec. 470, and cases there cited.)

It is urged, however, that the county court, after the original administrator had paid said mortgage indebtedness, approved the report in which said administrator took credit for the amount paid in satisfaction of said mort-

gages. The approval of the report wherein the adminis-
trator took credit for amounts paid out upon claims which
were not properly allowable against said estate would not
bind the heir upon subsequent application to sell real estate
to pay debts. *Roberts* v. *Flatt,* 142 Ill. 485.

The defendant in error relies upon *Millard* v. *Harris,*
119 Ill. 185, as sustaining the position that the original ad-
ministrator had the right to pay and satisfy said mortgage
indebtedness out of the proceeds of said sale. In that case
an executor, who was given power to sell real estate to pay
debts, sold the real estate at public sale. He stated to the
bidders that the premises were encumbered but that the
land was sold free and clear of encumbrances, and, after
the sale, from the proceeds of the sale he paid the encum-
brances upon the land. It was held, upon a final account-
ing, that the executor should only be charged with the net
amount which was realized from the sale. That case dif-
fers from the case at bar in that the sale made by the origi-
nal administrator was made by order of court. No repre-
sentations, so far as this record shows, were made at the
sale that the mortgages would be paid from the proceeds
of the sale, and the administrator was only authorized to
sell the interest of deceased in the land.

From a careful examination of this record we have
reached the conclusion that the claims of Phippin, Marshall,
Ewing and Hellyer were not proper claims upon which to
base an order of sale of real estate to pay debts, and that
the mortgage indebtedness, aggregating $2139.15, was im-
properly paid by the original administrator, and had the
original administrator used the money in his hands in the
payment of the debts which were properly allowed against
the estate of William Hughes, deceased, they would have
all been paid and satisfied without resorting to the sale of
real estate now sought to be sold.

As there are no debts shown to exist against the estate
of William Hughes, deceased, which real estate can lawfully

be sold to pay, the petition of the administrator *de bonis non* cannot be sustained.

The decree of the circuit court and the judgment of the Appellate Court will be reversed and the cause remanded to the circuit court, with directions to dismiss the petition.

*Reversed and remanded, with directions.*