[No. 2166]

## FIRST NATIONAL BANK OF ELY (a Corporation), Respondent, *v.* W. E. MEYERS and DORA MEYERS, Appellants.

[150 Pac. 308; 161 Pac. 929]

### ON REHEARING

1. Homestead—Establishment—Notice to Third Parties.
    Occupancy by the family is *prima facie* evidence to third parties of the homestead nature of the premises.

2. Homestead—Interest of Wife—Protection—"To Be Selected."
    Const., art. 4, sec. 30, declares that a homestead as provided by law shall be exempt from forced sale, and shall not be alienated without the joint consent of the husband and wife, and that laws shall be enacted providing for the recording of such homestead. Stats. 1864–65, c. 72, provides that a selected homestead shall be exempt from forced sale, and that the selection shall be made by recording intention in writing. Amendatory act, Stats. 1897, c. 20, provides that no deed or mortgage of a homestead, whether a declaration has been filed or not, shall be valid, unless both the husband and wife executed and acknowledged the same. *Held*, that although a homestead was not registered as required by law, the husband's sole conveyance or incumbrance of it did not affect the wife's right in the homestead, which could not be alienated unless the instrument was executed and given by both.

APPEAL from Ninth Judicial District Court, White Pine County; *Ben W. Coleman,* Judge.

On rehearing. Former opinion, reversing and remanding, **affirmed.** [For former opinion, see 39 Nev. 235.]

*Chandler & Quayle,* for Respondent:

The reasoning and decision of this court in the opinion filed is predicated in the right and power of the state legislature in 1897 to amend the early act of 1865 (Stats. 1864–65, p. 239)—an act passed pursuant to the constitution (sec. 31, art. 4)—in such a way as to restore to the laws of this state what has been called a *homestead de facto* as distinguished from a *homestead recorded as required by law.* In the course of that reasoning and in arriving at that conclusion, the court expressly recognizes that section 30, article 4, of the constitution, which provides that laws should be enacted for the recording of the

homestead, and the succeeding constitutional section (sec. 31, art. 4), are of "coordinate force." Such is the view which we take and which we took in our briefs. These two sections are found in the constitution in immediate sequence and must be regarded as in *pari materia.*

Properly construed, section 30 of article 4 of the constitution makes a provision for recording a condition concurrent with any homestead legislation. In effect, the section says that a homestead shall be provided for by law, and shall be exempt from forced sale or from voluntary alienation without the joint consent of husband and wife, provided that:

1. It shall not be exempt from sale for taxes or for the payment of obligations contracted for its purchase or for the erection of improvements thereon.

2. It shall be subject to any process of law obtained by virtue of a lien given by the consent of both husband and wife.

3. Laws shall be enacted providing for its being recorded in the county where situated.

The language of the section taken as a whole shows that these three provisos or limitations were intended to qualify and restrict the homestead right which was to be "provided by law."

A command to the legislature to enact certain laws impliedly prohibits it from legislating on the subject in other particulars. (*Keller* v. *State,* 1 L. R. A. n. s. 489.) *A fortiori,* should such a command be regarded as prohibiting the legislature from so legislating as to nullify the very command and its purpose?

The Washington cases referred to in the opinion show no element analogous to the vital point in question here. No provision of the Washington constitution bearing upon the legislative power or duty in reference to homesteads appears, and the powers exercised by the Washington legislature there were such as were absolutely free if restriction or limitation imposed by any coordinate provision such as our constitutional homestead section furnishes in the case before this court.

*Anthony Jurich* and *Walker & Haight*, for Appellants:

Sections 30 and 31, article 4, of the constitution cannot, as a matter of law, be regarded as being in *pari materia*. To be in *pari materia* statutes must relate to the same person or thing or class of persons or things. Of these statutes, one applies with equal force to the wife, the husband, or other head of the family, and pertains to property which may or may not belong to the community, or which may be the separate property of any one of them. On the other hand, the other section applies strictly to the wife, and to no other person, and pertains only to her separate property, and also to that held in common with her husband. (*State* v. *Putnam*, 111 Pac. 239; *Hamilton* v. *Rathbone*, 175 U. S. 414; *Utah National Bank* v. *Nelson*, 11 Pac. 907; 36 Cyc. 1147.) Statutes relating to different subjects cannot be in *pari materia*. (*State* v. *Wirt County*, 59 S. E. 889; *United States* v. *Colorado*, 157 Fed. 321; *State* v. *Gebhardt*, 44 N. E. 469; *Waterford Turnpike* v. *People*, 9 Bard. 161; *State* v. *Wirt County*, 59 S. E. 884; *Joyner* v. *Harris*, 72 S. E. 970; *Richardson* v. *Harmon*, 222 U. S. 96; *United States* v. *Stever*, 222 U. S. 167; *United States* v. *Munday*, 22 U. S. 175; *People* v. *Armstein*, 138 N. Y. S. 806.)

"The rule requiring statutes in *pari materia* to be construed together, cannot be invoked where the language of a statute is clear and unambiguous." (*Shaffer* v. *Burnett*, 77 N. E. 546; *Goodrich* v. *Russell*, 42 N. Y. 177; *In Re Bank*, 133 N. Y. S. 62; *People* v. *Tea Co.*, 178 Ill. App. 124.)

The purpose of section 31, article 4, of the constitution was to give the wife certain rights to which it was considered she was entitled. The legislature was commanded to carry out this by the passage of proper laws. The intent of the framers of a constitution, when ascertained, will prevail over any part of the law. (*Hawkins* v. *Filkins*, 24 Ark. 286; *Powell* v. *Sparkman*, 65 Pac. 503; *Bishop* v. *State*, 48 N. E. 1038; *McGregor* v. *Baylies*, 19 Iowa, 43; *People* v. *Potter*, 47 N. Y. 375; *Rasmussen* v. *Baker*, 50 Pac. 819.)

Sections 30 and 31 are independent of each other. The presumption and legal intendment is that each and every clause in a written constitution has been inserted for some useful purpose. (*Mayre* v. *Heart*, 75 Cal. 291; *People* v. *Wright*, 6 Colo. 92; *State* v. *Barnes*, 3 South. 433; *Powell* v. *Packman*, 65 Pac. 503; *Tuttle* v. *National Bank*, 44 N. E. 984; *Rasmussen* v. *Baker*, 50 Pac. 819; *Richardson* v. *Treasure Hill M. Co.*, 65 Pac. 74; *People* v. *Potter*, 47 N. Y. 375; *Coffin* v. *Board*, 56 N. W. 567.)

Even if the two sections of the constitution were repugnant, the last in order would prevail. (*Quick* v. *White Water*, 7 Ind. 570.) In construing a constitution, the thing to be sought is the thing expressed. (*State* v. *Doron*, 5 Nev. 399; *State* v. *Irwin*, 5 Nev. 111.)

The home may be exempt under other statutes than the homestead law. (*Estate of David Walley*, 11 Nev. 260.)

By the Court, MCCARRAN, J.:

A rehearing was granted in this case on petition of respondent, in order that a full and complete argument might be presented to the court and in order that the members of the bar of this state, *amici curiæ*, might, in view of the importance of the question to be determined, make such contribution as they saw fit by way of oral argument or brief to assist the court in arriving at a final determination.

In our former consideration of the case (*First National Bank of Ely* v. *Meyers*, 39 Nev. 235, 150 Pac. 308) we dwelt at some length on the constitutional and statutory provisions which seemed to us applicable to the matter at bar. Hence it will be unnecessary for us to go extensively into the question here on rehearing.

Our constitution (section 30 of article 4) provides:

"A homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relation exists."

If the constitutional provision terminated at this point, we apprehend there would be no serious question to

consider in the matter at bar. But it is the latter part of the section upon which this controversy in the main rests:

"And laws shall be enacted providing for the recording of such homestead within the county in which the same shall be situated."

It will be noted that this section of the constitution makes no attempt at describing, limiting, or qualifying either the character, class, or quantity of the property that shall constitute a homestead. Such is entirely left to future legislation.

So one thing is apparent without proceeding further, namely, that when this homestead contemplated by the provision of the statute is designated, limited, and fixed as to the character, class, and quantity of the property to be exempted, such homestead so designated, so described and so limited "shall not be alienated without the joint consent of husband and wife when that relation exists."

Pursuant to the direction of this section of the constitution, the legislature in 1865 passed an act which, as we take it, described, limited, and fixed the homestead contemplated by section 30 of article 14 of the constitution. It declared as to the property out of which the homestead might be created. It limited the amount of property in value that might be covered by the homestead, and thereby made exempt from forced sale, and in this respect specifically provided:

"The homestead, consisting of a quantity of land, together with the dwelling-house thereon, and its appurtenances, not exceeding in value the sum of five thousand dollars, to be selected by the husband and wife, or either of them, or other head of the family, shall not be subject to forced sale on execution. * * * Said selection shall be made by either the husband or wife, or both of them, or other head of a family, declaring their intention, in writing, to claim the same as a homestead." (Stats. 1864–5, p. 225.)

The statute proceeds to prescribe what declaration shall be made where the party selecting is a married person

and where the party selecting is an unmarried person; that the declaration should be signed, "acknowledged and recorded as conveyances affecting real estate are required to be acknowledged and recorded."

The statute continues by declaring how the husband and wife shall hold after the declaration of homestead. If the property selected be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration. The statute then makes provision as to how the property shall be disposed of in the event of the death of one or the other of the spouses. The section of the statute makes provision for tenants in common making declaration of homestead rights upon their respective estates in land and the improvements thereon.

But a singular feature with reference to this statute enacted under the specific mandate of the constitution is that while it defines the homestead, fixes its value, prescribes the property, separate or community, from which the homestead may be selected, provides for the recording of the same, specifies that from and after the filing for record of said declaration the husband and wife shall be deemed to hold said homestead as joint tenants, etc., it nowhere by any word or expression limits or prescribes or designates the rights of the respective parties to alienate or effect the disposal or incumbrance of the homestead so created. That the homestead "shall not be subject to forced sale on execution or any final process from any court" is all that is provided in the way of exemption.

In the case at bar it must be recalled that we are not dealing with the question of forced sale of a homestead under execution or by final process from a court for any debt or obligation. We are dealing exclusively with the right of one spouse to alienate a homestead without the joint consent of the other. We are dealing here solely with the question of the validity of an instrument made by the husband without the knowledge, consent, or acquiescence of the wife, by which instrument the former

alienated, at least to the extent of a mortgage, the home which had been at all times and was then openly and notoriously occupied by and was the only place of abode for himself, his wife, and his family. The statute enacted by our legislature in 1865 with a view to carrying out the specific requisites of section 30 of article 4, for some reason best known to itself, studiously avoided mention or provision as to the rights of the respective parties to the homestead as regards alienation of the same.

Respondent contends that the homestead "as provided by law" mentioned in the constitution means the homestead as recorded, and that no homestead can become effective for any purpose unless the parties claiming the same shall have first recorded their declaration.

What is the object and purpose of selecting a homestead or recording a homestead declaration? It is fundamental that the aim of the law in this respect is to give notice to those who would extend credit or who by any process would become creditors, that the property described in the notice should not be looked to as security for the declarant's future indebtedness.

It has repeatedly been held by the courts in cases involving the matter of forced sale under execution that the words in a constitutional provision, such as found in ours, "to be selected," have no significance where there is actual occupancy, and the property in question does not exceed in value or quantity that prescribed as a maximum by the statute or constitution. (*Stephen-Putney Shoe Co.* v. *White et al.*, 172 Ala. 89, 55 South. 503, Ann. Cas. 1913C, 1278; *Pollak* v. *McNeil*, 100 Ala. 203, 13 South. 937; *Green* v. *Farrar*, 53 Iowa, 426, 5 N. W. 557; *Riggs* v. *Sterling*, 60 Mich. 643, 27 N. W. 705, 1 Am. St. Rep. 554; *Barton* v. *Drake*, 21 Minn. 299; *Rogers* v. *Marsh*, 73 Mo. 64; *Peake* v. *Cameron*, 102 Mo. 568, 15 S. W. 70; *Hobson* v. *Huxtable*, 79 Neb. 334, 112 N. W. 658; *Kimball* v. *Salisbury*, 17 Utah, 381, 53 Pac. 1037; Id., 19 Utah, 161, 56 Pac. 973; *Atherton* v. *Hughes*, 249 Ill. 317, 94 N. E. 546; Thompson on Homesteads, sec. 230.)

In the case of *Beecher* v. *Baldy*, 7 Mich. 488, the Supreme Court of Michigan, in dealing with a constitutional provision (Const. 1850, art. 16) wherein it was expressed that:

"Every homestead of not exceeding forty acres of land, and the dwelling-house thereon, and the appurtenances to be selected by the owner thereof, * * * not exceeding in value fifteen hundred dollars, shall be exempt from forced sale on execution or any other final process from a court, for any debt contracted after the adoption of this constitution"

—went at length into the subject; and this decision has been quoted from extensively and cited approvingly by nearly every other court that has had to do with the subject. Among the expressions put forth in the opinion we quote the following:

"Having already shown what description of homestead is exempt by the constitution, we proceed to, second, the question of its selection. In what cases is any actual selection necessary, except that which is evidenced by ownership and occupancy as a homestead, in order to bring it within the constitutional exemption? To answer this we must first settle the meaning of the phrase 'to be selected,' as used in the constitution. Now, whether we look to its derivation or its universal use, the term, 'to select,' signifies to choose, to take some particular part or number from a greater; to take by preference from among others; to pick out; to cull. The term 'selection' has never, we think, been used to express merely an election or option, whether to take anything or nothing; to insist upon or to waive a right. The purpose for which a selection of a homestead is required is exactly in accordance with this universal signification of the term. The obvious purpose for which the selection is required is only to identify and define the property to which the exemption applies, so as to distinguish that which is exempt from that which may be sold at the instance of creditors. The selection in question, therefore, necessarily implies a larger tract or a greater amount of real

estate from which the selection is to be made, and it is only for such cases that the statute of 1848 has provided a mode of selection. Both that and the constitution are silent as to the election to claim a homestead at all, or to waive it altogether."

In the case of *Stephen-Putney Shoe Co.* v. *White, supra,* the Supreme Court of Alabama was confronted with a constitutional provision which, among other things, provided:

"Every homestead, not exceeding eighty acres," of land "and the dwelling and appurtenances thereon, to be selected by the owner thereof, * * * shall be exempt from sale on execution or any other" form of "process." (Const. Ala. 1901, sec. 205.)

Under this constitutional provision a statute had been enacted which among other things provided that:

"The homestead of every resident of this state, not exceeding one hundred sixty acres of land, and not exceeding two thousand dollars in value, * * * to be selected by the owner, * * * shall be exempted from levy and sale under execution, or other process, for [the collection of] debts contracted after April 23, 1873." (Acts 1876-77, p. 32, sec. 2.)

The term "to be selected," as used in the constitution of Alabama and in the statutory provision, was dwelt upon at length by the supreme court, and many of the decisions of other states, dealing with similar questions, were reviewed. Among other things, the court quoted approvingly from Thompson on Homesteads and Exemptions, sec. 652, to the effect that:

"It is a familiar maxim that the law does not require a person to do an impossible thing, or a vain thing. A necessary application of this maxim is that, where all the land which a debtor has embraces his family homestead, and is within the statutory area and value, he is not required, in order to save his right of homestead, to exercise an act of selection. * * * The exercise of such an act, under such circumstances, would not only be useless, but impossible."

We refer to the principle thus enunciated by these several authorities, not as decisive of the matter at bar, but rather as illustrative of a sound reason which we deem equally applicable to the question of selection and declaration as affecting right of husband and wife in the homestead premises.

We have already drawn attention to the fact that the statute of 1865, which defines the homestead and provides for the recordation of the same, makes no provision or intimation that selection or recordation are in any wise necessary to prevent alienation by one spouse without the joint consent of the other. When we stop to consider, it is not surprising that the legislature in its wisdom saw the uselessness of such a provision. One need but revert to the fact that recordation is for the purpose of giving notice to the world of the exemption of certain specific property from becoming security for obligations. But why should recorded notice be necessary as between husband and wife, who, occupying the premises, living together, perhaps beneath the very roof, perchance rearing a family therein, are fully aware of the nature and character of the premises? As between husband and wife occupying a given premises as a homestead, does any good reason occur why selection and recordation of the same should be necessary. As between these persons, would not such selection and recording be the "vain thing" unnecessary? The statutory provision of 1865 made no mention of alienation of the homestead premises being affected by the act of selection or declaration. The amendatory act of 1897, having to do with the rights of husband and wife, declared no more, indicated to no greater extent, and affected no greater limitation on the powers of the husband to alienate a homestead than did section 30 of article 4 of the constitution itself. This section of the constitution declared that "the homestead, as provided by law, should not be alienated without the joint consent of husband and wife." But the homestead which was by law thereafter provided was "to be selected," not with a view to affecting the powers of

alienation—because that specific matter is not mentioned in the statute—but rather to exempt the homestead so selected from forced sale under execution or any final process from any court for any debt or liability contracted. The homestead defined by the law of 1865—a quantity of land, together with the dwelling-house thereon and its appurtenances, not exceeding in value five thousand dollars—was required to be selected and hence recorded in order to accomplish the only purpose mentioned by the statute of 1865—exemption from forced sale under execution. Where in the constitutional provision or in any of our statutory provisions on the subject is there to be found an expression indicating that the homestead provided by law must be declared and recorded in order that it "shall not be alienated without the joint consent of the husband and wife?"

**1.** Is it the recorded declaration of homestead that makes the premises exempt from alienation? The statute fails to answer. Is alienation prohibited only where the declaration of homestead has been recorded? If so, why was it not so provided in section 1 of the act of 1865 entitled "An act to exempt the homestead and other property from forced sale in certain cases?" What is there in section 1 of this act? What word or phrase or sentence is there in the section that implies, much less expressly declares, that it shall be effective to any extent as prohibiting alienation of the homestead by the husband, whether recorded or unrecorded? What is there about the statute from which we can draw even an inference that it was intended to affect the rights of husband and wife, and in the alienation of an occupied homestead who else can be affected, in view of the fact that the occupancy by the family is *prima facie* evidence to third parties of the homestead nature of the premises? (*Cook* v. *McChristian*, 4 Cal. 23; *Lubbock* v. *McMann*, 82 Cal. 226; *Larson* v. *Butts*, 22 Neb. 370; *Brichacek* v. *Brichacek*, 75 Neb. 417; *Hobson* v. *Huxtable, supra.*)

Respondent argues with great earnestness that the decision of this court in the case of *Child* v. *Singleton*,

15 Nev. 461, is decisive of the question at bar.    But we are constrained to believe from the language of that decision that had the learned and eminent jurist who drafted the opinion been confronted with a statute such as that found in the amendatory act of 1897 a different conclusion would have been arrived at.

The amendatory act of 1897 provides:

"* * * No deed of conveyance, or mortgage, of a homestead as now defined by law regardless of whether a declaration thereof has been filed or not, shall be valid for any purpose whatever unless both the husband and wife execute and acknowledge the same as now provided by law for the conveyance of real estate."    (Stats. 1897, p. 24.)

This is in no wise repugnant to the statute of 1865, which was enacted to accomplish a different purpose, as its title indicates.    The amendatory act of 1897 was a limitation to the dominance of the husband over the community property.    It sought to accomplish a humane purpose, and in this it sought to do no more than was made manifest as being the spirit and intention of the framers of the organic law.

We are asked:

"If the recording is not an essential element of the homestead, what did the constitutional convention mean by saying that the legislature shall enact laws providing for the recording of the homestead, and why did the legislature so enact?"

We reply that the legislature did not, by any word or sentence, expression or inference, declare that the homestead should be recorded in order that alienation by one spouse without the consent of the other could not be effected.    The statute says:

"The homestead * * * to be selected by the husband or wife, or either of them, * * * shall not be subject to forced sale."

"To be selected," in order to be exempt from forced sale, is the statutory direction.    Nowhere does the statute in this respect say or infer that the term "to be selected"

means to make inalienable by one spouse without the consent of the other. Selection, as we have already emphasized, is for the purpose of giving notice. What an idle thing it would be to say that the wife shall give notice to the husband by selecting, and hence recording, a declaration under oath, etc., that she claimed the roof over her head, acquired though it was by her efforts in conjunction with his, as a homestead. This they contend she must do in order to bring to his attention that the community property, "consisting of a quantity of land, together with the dwelling-house thereon and its appurtenances," could not be alienated by him. In other words, if we harken to the contention supporting respondent, we shall say the wife must bring this selection to the attention of her husband by public recordation in order that he may be bound by the specific declaration found in section 30, article 4, of the organic law, which says, in no uncertain terms:

"The homestead as provided by law shall not be alienated without the joint consent of the husband and wife."

The law does not deal in absurdities.

Nor does the constitution require recording of the homestead as affecting the rights of husband and wife to alienate. The constitution says:

"Laws shall be enacted providing for the recording of such homestead." What homestead? The homestead "as provided by law."

The homestead contemplated was instituted by the law of 1865, and the homestead "provided by [that] law" was a homestead "consisting of a quantity of land, together with the dwelling-house thereon," and was required to be selected to effect one expressed purpose only—to be exempt from forced sale. If we say that the expression in the constitution, "provided by law," means a selected and recorded homestead, then the expression has no bearing on the right of alienation, because the homestead that was required "to be selected" and recorded only affects the exemption from forced sale under execution.

Under fundamental rules of construction we are bound to give effect to every statutory provision not repugnant to the organic law.    No one will attempt to contend that under section 31, article 4, of our constitution, the legislature could not enact a law such as the amendatory act of 1897.    This act was clearly within the mandate of the constitution providing that "laws shall be passed more clearly defining the rights of the wife," etc.    If we say that the amendatory statute of 1897 is unconstitutional, then we must say that no law can be passed protecting the wife from the act of alienation of the homestead by the husband, unless she does the vain, idle, absurd thing —select and record, and thereby serve notice on her spouse.

In the case of *Ham* v. *Santa Rosa Bank,* 62 Cal. 134, 45 Am. Rep. 654, the court, dwelling on a peculiar statute of California, emphasized the words "the record of the declaration operates as a notice of selection to all the world."    This is but a reannunciation of an old principle. It does not apply to our peculiar statute, because our statute says nothing as to selection or recordation as affecting the rights of the wife as against those of the husband.    Recordation may be, and in fact is, necessary to give notice to all the world of the selection of the homestead to exempt it from forced sale under execution. But to exempt it from alienation by one spouse without the consent of the other, in the absence of specific constitutional or statutory provision, why should such be necessary?    Neither the constitutional provision nor the statute law of California is the same as that in this jurisdiction on the subject of homestead rights or the rights of husband and wife in respect thereto.    Hence the California decisions afford no assistance in the final question here.

**2.** The provision of the statute of 1865, "the homestead * * * shall not be subject to forced sale * * * except * * * for the payment of any mortgage thereon executed and given by both husband and wife," emphasizes, if anything, the very conclusion we draw

here. It revives the spirit and intent of the framers of the law, as well as the writers of our constitution, that the wife's right in the homestead could not be alienated unless the instrument of alienation was "executed and given by both."

The occupancy of the premises by the Meyers family, consisting of the maker of the mortgage in question here, his wife and children, was at all times known to the respondent. Its character as a homestead in fact was a matter of common knowledge. The act of Meyers in making the mortgage of these premises without the cooperation of his wife was one prohibited by the spirit and letter of the constitution, as well as by the specific language of the statute of 1897. His act in mortgaging the premises was void.

Our opinion here, and the observations herein made, are to be understood as in connection with and in furtherance of our views as expressed in our former opinion. (*First National Bank of Ely* v. *Meyers*, 39 Nev. 235, 150 Pac. 308.)

The judgment is reversed. The case is remanded. It is so ordered.

NORCROSS, C. J., concurring:

I concur in the judgment and order, and adhere to the views expressed in the former opinion of this court.

COLEMAN, J.:

As I presided at the trial of this case in the district court, I declined to participate in its consideration when it first demanded the attention of this court. I would be reluctant to file an opinion in the case, in any event; but in view of the importance of the question involved, may elect to do so at a later date.