[No. 2166]

# FIRST NATIONAL BANK OF ELY (A CORPORATION), RESPONDENT, v. W. E. MEYERS AND DORA MEYERS, APPELLANTS.

[150 Pac. 308]

1. HUSBAND AND WIFE—COMMUNITY ESTATE—RIGHT TO CONTROL.
   As a general proposition, by reason of the husband's sole right to control the community property, he may alienate during the coverture, without the consent of the wife, any property belonging to the community.

2. HOMESTEAD—INTEREST OF WIFE—PROTECTION.
   Const. art. 4, sec. 30, declares that a homestead shall be exempt from forced sale and shall not be alienated without the joint consent of the husband and wife. Stats. 1865, c. 72, sec. 1, passed pursuant to the constitution, provides that a. homestead selected by the husband and wife shall be exempt from forced sale, and that the selection shall be made by the recordation of a declaration of intent. Const. art. 4, sec. 31, declares that all property of the wife owned before marriage shall be her separate property. The act of 1873, passed pursuant to the constitution provides in section 1 (Rev. Laws, 2155) that all property of the wife owned before marriage and acquired thereafter by gift, bequest, devise, or descent is her separate property, and that property similarly acquired by the husband should be his separate property, while section 2 (section 2156) declares that all other property acquired during the marriage shall be the community property. Section 6, as amended in 1897 (section 2160), declares that the husband has entire control over the community property, with absolute power of disposition, but that no deed of conveyance or mortgage of a homestead, regardless of whether a declaration has been filed or not, shall be valid for any purpose, unless both the husband and wife execute and acknowledge it. Held, that though the homestead was not registered as required by law, the husband's sole conveyance or incumbrance of it cannot pass title.

APPEAL from Ninth Judicial District Court, White Pine County; Ben W. Coleman, Judge.

Action by the First National Bank of Ely against W. E. Meyers and Dora Meyers to recover possession of certain real property. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. **Reversed and remanded.**

Anthony Jurich and Walker & Haight, for Appellants:

The property in controversy is such a homestead as

provided by law, and inalienable without the consent of the wife. (Const. Nev., art. 4, secs. 30, 31; Rev. Laws, 2160.)

*Chandler & Quayle,* for Respondent:

That part of the act of February 27, 1897 (Rev. Laws, 2160), amending the act of March 10, 1873, declaring that "no deed or conveyance, or mortgage of a homestead as now defined by law regardless of a declaration thereof has been filed or not, shall be valid for any purpose whatever unless both the husband and wife execute and acknowledge the same as now provided by law for the conveyance of real estate," is void, being repugnant to the provisions of section 30, article 4, Constitution of Nevada. (*Child* v. *Singleton,* 15 Nev. 461, 463; Nev. Const. Debates and Proc. 1864, pp. 285, 286, 287, 303; *Estate of David Walley,* 11 Nev. 260, 265; *Smith* v. *Shrieves,* 13 Nev. 303, 327; *Smith* v. *Stewart,* 13 Nev. 65, 69; *Commercial & S. Bank* v. *Corbett,* 5 Sawy. 543, 6 Fed. Cas. 217; *Roberts* v. *Greer,* 22 Nev. 318, 329.)

By the Court, McCARRAN, J.:

From the record in this case, it is disclosed that W. E. Meyers and his wife, Dora Meyers, together with their family, resided for a number of years in certain property in the town of Ely, this property being their home and abode. Appellant Meyers, in or about the month of September, 1907, borrowed from respondent, the First National Bank of Ely, the sum of $3,000, giving his note as security. At the same time he made, executed and delivered to A. B. Witcher, cashier of the respondent bank, a deed to the property then and theretofore occupied by himself and his wife, Dora Meyers, and their family as a home—their only home and habitation, so far as the record discloses. In the making of this instrument, appellant Meyers was not joined by his wife, nor does the record disclose that she was cognizant of his actions in this respect, or that she received, either directly or indirectly, any of the benefits of the money involved in the transaction; nor does it appear that any

of this money was used to purchase or build the home. On January 25, 1908, A. B. Witcher by deed conveyed the property to the respondent, the First National Bank of Ely; and on April 3, 1911, the appellant Meyers entered into an agreement with the respondent bank, in writing, part of which is as follows:

"Whereas, the party hereto of the second part did by deed dated September 7, 1907, convey to one A. B. Witcher the following described property, situated in the city of Ely, county of White Pine, State of Nevada [here follows a description of the property], and which deed was intended as security for the payment of a certain sum of money owing by the party hereto of the second part; and whereas, the party hereto of the first part has since succeeded to the interest of said Witcher in said indebtedness and the said security therefor and now holds title to said property as security for the repayment to it by said party of the second part of the sum of thirty-four hundred fifty-seven and $\frac{2}{100}$ dollars, which sum is past due and now owing to said first party; and whereas, suit to foreclose the mortgage referred to would entail a large expense and so put an additional burden on said second party: Now, therefore, in consideration of the premises and of the mutual promises herein contained and to settle and define the business matters existing between the parties hereto in relation to said property, it is reciprocally agreed as follows:

"First—That from the date hereof the title, equitable as well as legal, to said property is recognized as vested and fixed in the party hereto of the first part, subject to the right of said second party to buy the same on complying with the terms and conditions hereof.

"Second—The exclusive right and option to buy the said property within six months from the date hereof is hereby granted unto said second party, conditional, however, upon his paying within said period of six months to said first party at its banking room in Ely, Nevada, the sum of thirty-four hundred fifty-seven and $\frac{2}{100}$ dollars, with interest thereon at the rate of twelve per cent from the date hereof to the date of such payment,

together with any sum or sums, with like interest, which may be paid out from time to time by the party hereto of the first part for taxes and insurance on or otherwise for the preservation, care and safe-keeping of said property.

"Third—All income and rents hereafter paid or which are payable by the tenants or occupants of the building or improvements on said property shall be paid to and belong to said first party, provided if said second party shall during said period of six months exercise his option to buy said property, then all rents collected by said first party shall be credited on the said purchase price computable under and provided in paragraph second above.

"Fourth—Time is of the essence of this option, and the terms and conditions hereof shall inure to the benefit of and bind the heirs, executors, administrators, successors and assigns of the parties hereto, as well and strongly as the parties themselves."

The foregoing instrument, like the deed to Witcher, was signed by appellant Meyers individually, without any act of acquiescence on the part of his wife, and, so far as the record discloses, without her knowledge or assent. This action being commenced in the court below by the respondent bank to recover possession of the property involved in the transaction between appellant Meyers and respondent, separate answers were filed by the appellant Meyers and his wife, Dora Meyers. The original answer filed by the appellant Dora Meyers contained allegations to the effect:

"(1) That prior to the 15th day of June, A. D. 1907, this defendant Dora Meyers, and defendant W. E. Meyers intermarried, and ever since have been and now are husband and wife; that there are four minor children, the issue of said marriage.

"(2) That prior to the 7th day of September, A. D. 1907, to wit, commencing with the 15th day of June, A. D. 1907, and continuously thereafter up to the present time, the said premises described in plaintiff's complaint were and have been owned and actually occupied by this defendant, together with her said husband and their four

minor children, as a homestead, all of which the said plaintiff and its grantor, A. B. Witcher, then and there at all times well knew; that prior to the 7th day of September, A. D. 1907, to wit, continuously since June 15, A. D. 1907, said premises have been and now are actually occupied by this defendant and her said husband, together with their said minor children, as a homestead, and the same is claimed by this defendant as such and as exempt from forced sale; and this defendant has not, at any time, signed, executed, or delivered any instrument mortgaging, conveying, or in any other way or manner conveying, alienating, or incumbering said property or homestead to any person or persons whatsoever.

" (3) That the said premises and the building thereon, with the appurtenances, do not exceed in value the sum of $5,000 in cash.

" (4) That neither this defendant nor her said husband, nor any of their said minor children, have any home other than on and in the premises described in said complaint.

" (5) That on or about the 4th day of November, A. D. 1914, this defendant, for the use and benefit and in behalf of herself and defendant W. E. Meyers and their said minor children, the issue of said marriage, all of which children are still minors, made, executed, and caused to be recorded in the office of the county recorder in and for White Pine County, Nevada, being the county and state in which said property is situated, and in Book 38, Old E., Miscellaneous Records of said office, at pages 429, 430, a declaration of homestead of, in, and to said described property, with the improvements thereon, which said declaration of homestead set forth the facts required by the statutes of the State of Nevada to be stated in a declaration of homestead, and which was duly acknowledged by this defendant as required by law, and that this defendant does now claim and hold, and at all times since the 15th day of June, A. D. 1907, has claimed and held, said property described in plaintiff's complaint, and the whole thereof, as a homestead for herself and her said husband and their said minor children."

A demurrer to this original answer being sustained by the court below, the appellant Dora Meyers amended her answer, and in her amended answer set forth the following:

" (1) That for more than fifteen years last past, this defendant Dora Meyers, and defendant W. E. Meyers have been and now are husband and wife.

" (2) That prior to the 15th day of June, 1907, the said defendants, out of the moneys belonging to the community existing between said defendants, purchased the land described in plaintiff's complaint, and received a deed therefor in the name of the defendant W. E. Meyers, which said deed was recorded in the office of the county recorder of White Pine County, State of Nevada, on the 8th day of August, 1907, in Book 33, pages 402, 403, of the Real Estate Records of said county; that prior to the said 15th day of June, 1907, the said defendants, out of the moneys belonging to said community existing between said defendants, constructed and erected upon said premises a dwelling house, which said dwelling house and said premises, ever since the said 15th day of June, 1907, continuously have been and now are actually occupied by the said defendants, and each of them, and their minor children, as the dwelling house and home of said defendants and their minor children, and is the only dwelling house and home belonging to or owned by said defendants, or either of them, in White Pine County, Nevada, or elsewhere, at any time herein mentioned.

" (3) That the said premises, with the said dwelling thereon and the appurtenances, do not exceed in value the sum of $5,000.

" (4) That this defendant has not, at any time since said premises and dwelling were acquired and occupied by these defendants as aforesaid, signed, executed, or delivered any instrument in writing mortgaging, conveying, or in any other way or manner conveying, alienating, or incumbering said premises and dwelling to any person or persons whatsoever.

" (5) That this defendant had no knowledge and no notice, at any time or at all, of the execution by her

husband of the deed dated the 7th day of September, 1907, nor the deed dated the 3d day of April, 1911, and described in plaintiff's complaint, and had no knowledge or information of the indebtedness for which the same or either of them was given."

The answer of the appellant W. E. Meyers, as well as his amended answer, alleged substantially the same facts, by way of affirmative defense, as did that of the appellant Dora Meyers.   To the amended answer, no demurrer was interposed; but during the course of the trial the appellant W. E. Meyers was called as a witness in behalf of the defense, and offered to prove the facts alleged in sections 1, 2, 3, 4, and 5 of the appellant's amended answer.   This evidence being objected to by respondent, and the objection thereto being sustained by the court below, the action of the court in thus sustaining the objection, and thereby refusing appellant Dora Meyers to prove those allegations of her affirmative defense as set forth in sections 1, 2, 3, 4, and 5 of her amended answer, is assigned as error in the appeal to this court.

Two primary questions are presented by this appeal:

First—Is the instrument of September 7, 1907, to wit, the deed from appellant Meyers to Witcher, and the instrument of April 3, 1911, as set forth above, void because the property in question is community property as defined by law, and said instruments were not executed by both appellants as husband and wife as required by section 2160, Revised Statutes, 1912?

Second—Does the evidence show, in this case, that the relationship of mortgagor and mortgagee existed between the parties hereto at the time of the commencement of this action?

**1, 2.** It will be unnecessary, in our judgment, to determine the second question.

In the consideration of the first question, our attention is drawn to two separate provisions of our constitution, which, while being of coordinate force, must be viewed, however, as having separate significance.   Section 30, article 4, of the constitution, provides:

"A homestead, as provided by law, shall be exempt

from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relation exists; but no property shall be exempt from sale for taxes or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon; *provided,* the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife; and laws shall be enacted providing for the recording of such homestead within the county in which the same shall be situatèd."

Pursuant to this directory provision of the constitution, the legislature in 1865 passed an act, entitled "An act to exempt the homestead and other property from forced sale in certain cases," section 1 of which is as follows:

"The homestead, consisting of a quantity of land, together with the dwelling house thereon, and its appurtenances, not exceeding in value, five thousand dollars, to be selected by the husband and wife, or either of them, or other head of a family, shall not be subject to forced sale on execution, or any final process from any court, for any debt or liability contracted or incurred after November thirteenth, in the year of our Lord one thousand eight hundred and sixty-one, except process to enforce the payment of the purchase money for such premises, or for improvements made thereon, or for legal taxes imposed thereon, or for the payment of any mortgage thereon, executed and given by both husband and wife, when that relation exists. Said selection shall be made by either the husband or wife, or both of them, or other head of a family, declaring their intention in writing to claim the same as a homestead. Said declaration shall state when made by a married person or persons, that they or either of them are married, or if not married, that he or she is the head of a family, and they or either of them, as the case may be, are, at the time of making such declaration, residing with their family, or with the person or persons under their care and maintenance on the premises, particularly describing said

premises, and that it is their intention to use and claim the same as a homestead, which declaration shall be signed by the party or parties making the same, and acknowledged and recorded as conveyances affecting real estate are required to be acknowledged and recorded; and from and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants; *provided,* that if the property declared upon as a homestead be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration; and if such property shall retain its character of separate property until the death of one or the other of such spouses, then and in that event the homestead right shall cease in and upon said property, and the same belong to the party (or his or her heirs) to whom it belonged when filed upon as a homestead; *and, provided further,* that tenants in common may declare for homestead rights upon their respective estates in lands, and the improvements thereon; and hold and enjoy homestead rights and privileges therein, subject to the rights of their cotenants, to enforce partition of such common property as in other cases of tenants in common." (Stats. 1879, c. 131.)

That other provision of our constitution to which our attention has been drawn is section 31, article 4:

"All property, both real and personal, of the wife owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property; and laws shall be passed, more clearly defining the rights of the wife in relation, as well to her separate property, as to that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

Pursuant to the directory provision in this section of our constitution, the legislature in 1873 passed an act entitled "An act defining the rights of husband and wife." (Section 2155, *et seq.,* Revised Laws, 1912.) By this act, it is provided:

"SECTION 1. All property of the wife, owned by her before marriage, and that acquired by her afterwards by

gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property; and all property of the husband owned by him before marriage, and that acquired by him afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property.

"SEC. 2. All other property acquired, after marriage, by either husband or wife, or both, except as provided in sections 14 and 15 in this act, is community property."

Section 6 of the act of 1873 was amended by the legislature of 1897, and the section as amended reads:

"The husband has the entire management and control of the community property, with the like absolute power of disposition thereof, except as hereinafter provided, as of his own separate estate; *provided,* that no deed of conveyance, or mortgage, of a homestead as now defined by law regardless of whether a declaration thereof has been filed or not, shall be valid for any purpose whatever unless both the husband and wife execute and acknowledge the same as now provided by law for the conveyance of real estate."

Respondent, in its brief, refers us to the several decisions of this court bearing upon the acts of our legislature defining homesteads and homestead rights: *Smith* v. *Stewart,* 13 Nev. 69; *Smith* v. *Shrieves,* 13 Nev. 327; *In Re Estate of Walley,* 11 Nev. 260; *Child* v. *Singleton,* 15 Nev. 461. But these decisions, having to do with the construction and application of homestead laws passed pursuant to the provisions of our constitution, we deem of little assistance in deciding the question here presented.

By the territorial statute of 1861, as construed and applied by this court in the case of *Goldman* v. *Clark,* 1 Nev. 607, residence alone was sufficient to constitute a legal homestead, and the husband had no power to sell or incumber it without the consent of the wife. By the constitutional provision, however (sec. 30, art. 4), the legislature of the state was enjoined to enact statutes with a view to the recording of homesteads; and it was

with a view of meeting this requirement that the act of 1865, quoted *supra*, was passed.

In the case of *Child* v. *Singleton, supra,* this court, in discussing this legislation and the territorial act which was formerly in force, said:

"This law, while it does not expressly repeal the territorial law of 1861, has, in the opinion of the court, the effect of repealing it by implication. This being so, it follows that we have no other law on our statute book defining what a homestead is; and, since it is only the homestead 'provided by law' that cannot be alienated without the consent of the owner's wife (Const. art. 4, sec. 3), it follows that the homestead of these appellants, not having been selected by a recorded declaration of the claim (Comp. Laws, 186), was, at the date of the mortgage of plaintiff, subject to alienation by the husband alone."

From the expression of this court quoted above, it appears manifest that in that case the court held as it did by reason of the implied repeal of the territorial act of 1861, and would not have so held had the territorial act of 1861 remained in force and effect. The statute of 1897 was in effect a reenactment of the policy of the territorial act repealed by the statute of 1865. The homestead sought to be recognized and protected by the act of 1897 is not the homestead "provided by law" referred to and made a basis for the decision in the case of *Child* v. *Singleton, supra,* but is the homestead *de facto,* so to speak, created by its being the abiding place of the husband and wife. The very absence of a statute similar to that enacted in 1897 was what impelled the court to hold as it did in the case of *Child* v. *Singleton.*

Reference is made by respondent to the case of *Dunker* v. *Chedic,* 4 Nev. 378. The question there presented was as to the power of the legislature, under the constitution, to exempt the homestead from forced sale upon a lien created by husband and wife for a loan or other indebtedness. The court there had under consideration the validity of a statute which provided that:

"No mortgage or alienation of any kind, made for the purpose of securing a loan or indebtedness upon the homestead property, shall be valid for any purpose whatever," and the court there held that the legislature exceeded its powers in passing the law in question, for the reason that the statute in question sought to establish that certain provisions of exemption should apply to a lien created by husband and wife acting jointly, when the constitution expressly said they should not. The decision in that case rested squarely upon section 30, article 4, of the constitution.

The statute in question in the case at bar was enacted pursuant to the provision and mandate of our constitution, as set forth in section 31, article 4. The act in question, as its title implies, is an act defining the rights of husband and wife, and takes its authority, as well as its inspiration, from section 31, article 4, of the constitution. Section 6 of the act, as quoted above, amended as it was in 1897, is unquestionably within the mandate of section 31, article 4, expressed in the words:

"Laws shall be passed, more clearly defining the rights of the wife in relation, as well to her separate property, as to that held in common with her husband."

Section 6 of the act of 1873, as amended in 1897, and as set forth herein, clearly defines the rights of the wife in property held in common with her husband, where such property is the home or homestead *de facto*, the abiding place of the community created by the marriage relation. The case of *Dunker* v. *Chedic, supra*, is therefore to be distinguished from the case at bar.

As to whether or not the declaration of homestead, filed by the appellant Dora Meyers after her husband had made and executed the instrument in question, might be set up and interposed as a valid defense in this case we deem unnecessary to decide. What we do assume to determine is as to whether or not the court erred in denying the right of the appellants to prove the allegations of their affirmative contents set up in their amended answer, and as to whether or not these alleged facts, if

proven, would constitute a valid defense sufficient to warrant the court in rendering judgment for appellants. The act of our legislature of 1873, as amended in 1897 (section 2155, *et seq.*, Revised Laws), is, as its title sets forth, an act defining the rights of husband and wife, and by section 6 of that act it is manifest that the policy sought to be established by the legislature was one that would preclude the possibility of a wife being divested of the home by the acts of her husband, perpetrated either with a design to defraud her, or through misguided or imprudent business transactions in which she had no part.   In other words, the act was intended, both in spirit and letter, to protect the dependent ones of the family, and to secure to them the shelter of home, where such home had been acquired by the joint efforts and through the joint endeavor or industry of both spouses.

.  It has been stated that, as a general proposition of law, by virtue of the husband's sole right to control the community property, he may, in most jurisdictions where the community system obtains, alienate during the coverture, even without the consent or joinder of the wife, any of the property belonging to the community.   (21 Cyc. 1666, and cases there cited.)   Our attention has been drawn to no other state in which there exists a statutory provision of force or effect similar to that contained in section 2160 of our code.   There is a provision in the act of the State of Washington to the effect that the husband shall have no right to sell or incumber the real property belonging to the community, unless the wife joins with him in the execution of the deed; and this statute has received the construction of the courts of last resort of the State of Washington in a number of cases, in each of which the statute has been upheld.   (*Sadler* v. *Niesz*, 5 Wash. 182, 31 Pac. 630, 1030; *In Re Murphy's Estate*, 46 Wash. 574, 90 Pac. 916; *Holyoke* v. *Jackson*, 3 Wash. T. 235, 3 Pac. 841; *Hoover* v. *Chambers*, 3 Wash. T. 26, 13 Pac. 547.)

The matter set up by appellants in this case by way of affirmative defense averred the community character of the property in question, setting forth, in substance, that

the same had been acquired and constructed out of moneys secured by the joint efforts of the appellant and his wife; that it was their home and the home of their family. Moreover, it was averred that these facts were at all times known to the respondent bank and to A. B. Witcher, its cashier. These averments, if established as facts, would be sufficient, in our judgment, to bring the case squarely within the statute prohibiting the husband from conveying or mortgaging the homestead without the execution and acknowledgment of the instrument by his wife. By the term "homestead," as used in section 6 of the code defining the rights of the husband and wife, it was unquestionably the intention of the legislature to bring the inhibition sought to be established, and the protection sought to be afforded, to bear on the community property actually occupied as a homestead, *i. e.*, a place of abode "consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value five thousand dollars."

It is unnecessary for us to determine in this instance as to what limitations or extent, either from a standpoint of value or amount, the homestead contemplated by section 6 should embrace, so long as it did not exceed in value that amount set as a maximum by the homestead act as set forth in our statute, to wit, $5,000. The statute provides a penalty, so to speak, for the making of an instrument mortgaging or disposing of the homestead premises' by the husband without the action of his wife; and in this respect it declares the instrument to be void.

In the case of *Graves* v. *Smith*, 7 Wash. 14, 34 Pac. 213, the court held, under the statute of Washington, that a husband could not enter into a valid contract which would convey community real estate.

In the case of *Gunderson* v. *Gunderson*, 25 Wash. 459, 65 Pac. 791, it was held that a deed of land situate in another state, executed by a husband as grantor, without naming the wife as grantor, and without any acknowledgment on her part, was insufficient, even though the

husband at the same time held a power of attorney from his wife.

In the case of *Hoover* v. *Chambers, supra,* it was held that a husband could not incumber community real estate, even by a lease, where such instrument was made by him alone, and that the same was void.

In *Re Murphy's Estate, supra,* it was held that, although there were recitals in a deed made to a husband, to the effect that the land was his separate property, such recitals could not affect the community character of the land, where it was purchased with community funds and the wife was not aware of the recitals; and, under such conditions, the husband could not dispose of the property in question without the cooperation of his wife.

In *Holyoke* v. *Jackson, supra,* the Supreme Court of Washington held that a contract for the sale of community property, entered into by the husband, was invalid where such contract was made or entered into without his wife's joining therein. Under such a condition, it was held that the vendee, having knowledge or notice of the fact that the subject-matter of the contract was real estate impressed with a community nature, could not recover damages for the husband's failure to execute the contract.

The case of *Sadler* v. *Niesz, supra,* is a most interesting case upon the subject, containing, as it does, separate opinions written by the three judges of the Supreme Court of Washington. The case is illuminative of the subject; and, while holding that, under conditions such as those presented in that case, the wife was estopped from setting aside transactions entered into by the husband when he had openly declared that he was not a married man, and when her absence tended to induce the community to believe in his representations in this respect, nevertheless the court in that case held that the spirit and intent of a statute similar to ours was beneficial and salutary, tending, as it did, to prevent the wife from being divested of that property which, by her efforts in combination with those of her husband, she had assisted

in securing or creating. We deem the same reasoning to be applicable in the case at bar.

In the case of *Konnerup* v. *Frandsen*, 8 Wash. 551, 36 Pac. 493, the court held that the wife might be estopped from setting up title to the land, although community in nature, where an agreement for sale had been made at her request and with her full knowledge, acquiescence, and consent.

The conditions in the case at bar, as set forth by the record, contain none of the elements which, as we view it, would estop the appellant Dora Meyers from setting up in her answer the affirmative defense therein contained; and, if these averments were established, they would, in our judgment, constitute a valid defense.

The action of the court, in sustaining the objection to the evidence of the appellant Meyers tending to support this affirmative defense, was error.

For the foregoing reason, the judgment of the lower court and the order denying a new trial should be reversed.

It is so ordered.

NORCROSS, C. J.: I concur.

COLEMAN, J., having tried the case in the lower court, did not participate in the decision.

*Per Curiam:*

Petition for rehearing granted.