**MYERS v. MATLEY.**

No. 10028.

Circuit Court of Appeals, Ninth Circuit.

Sept. 15, 1942.

As Amended Oct. 14, 1942.
Rehearing Denied Oct. 26, 1942.

Painter, Withers & Edwards, of Reno, Nev., for appellant.

William M. Kearney and Robert Taylor Adams, both of Reno, Nev., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

On October 24, 1940, an involuntary petition in bankruptcy was filed against Marshall Reno Matley, appellee's husband; and on the same day, with Matley's consent, he was adjudicated a bankrupt.

On November 20, 1940, appellee filed with the recorder of Washoe County, Nevada, a declaration claiming as a homestead certain premises, consisting of a residence lot in Reno, listed by her husband in his bankruptcy schedules. On November 27, 1940, appellee filed her petition claiming the premises as exempt. The petition was denied by the referee; but upon review by the court the referee's order was reversed, and the trustee appeals.

Appellee and the bankrupt were married in 1931. The Reno property was acquired from their earnings after marriage and was community property. Subsequent to the acquisition of the lot the Matleys built a residence thereon and occupied the same as a home until 1936, when the two went to work for the bankrupt's father on a ranch near Wadsworth, Nevada. In April 1940 they moved to Fernley where for a brief time the bankrupt operated a small country store. It is in evidence that the absence of the Matleys from the home in Reno was of a temporary nature and that at all times they considered it to be their home and intended to return to it.

During the summer of 1940 the couple separated, and in July appellee returned to Reno and requested the tenant living in the house to vacate. On vacation by the tenant on October 21, 1940, appellee occupied the place and was residing there at the time of the filing of the bankruptcy petition and thereafter, although the bankrupt did not join her. The couple have no children. During the period immediately in question a divorce action was pending between them, although a reconciliation was believed possible and was being sought by the parties. However, in May 1941 appellee was granted a divorce, and by the decree the Reno home was set aside for her as her sole property.

The question before us is whether, in light of the fact that the homestead declaration was not filed until after the filing of the bankruptcy petition, the wife is entitled to have the property excluded as exempt.

By § 6 of the Act, 11 U.S.C.A. § 24, bankrupts are allowed the exemptions prescribed by the state laws in force at the time of the filing of the petition. Article IV, § 30, of the Constitution of Nevada, provides: "A homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relation exists; * * * and laws shall be enacted providing for the recording of such homestead within the county," etc. Section 3315 of the Compiled Laws of Nevada prescribes, in substance, that the homestead selected "shall not be subject to forced sale on execution, or any final process from any court," for any debt or liability, except certain obligations not here pertinent. The selection may be made either by the husband or the wife, and the declaration is required to state that they, or either of them, are residing on the premises at the time and claim the same as a homestead. The declaration must be ac-

knowledged and recorded as conveyances affecting real estate.

The Nevada decisions hold that the filing of a declaration of homestead at any time before sale, although after levy, forestalls sale on execution. Hawthorne v. Smith, 3 Nev. 182, 93 Am.Dec. 397. Likewise, after a sale on execution, where no declaration has been filed, the property is not exempt. Lachman v. Walker, 15 Nev. 422.

We have to determine whether White v. Stump, 1924, 266 U.S. 310, 45 S.Ct. 103, 104, 69 L.Ed. 301, is controlling. The court there held, on consideration of the Idaho law, that the bankrupt's declaration of homestead came too late where not placed of record until after the filing of the bankruptcy petition. The state statute (Idaho Code, § 54–1206) provided that "from and after the time the declaration is filed for record the premises therein described constitute a homestead." The local decisions, differing from those of Nevada, were to the effect that the filing of a declaration does not operate to avoid a prior attachment or execution levy. The Supreme Court stressed the then provisions of § 70, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a, to the effect that the trustee shall "be vested by operation of law with the title of the bankrupt, * * * except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." It was thought that when the law speaks of property which is exempt it refers to some point of time, and that the point of time intended is the date of the filing of the petition. Said the court, "the bankrupt's right to control and dispose of the estate terminates as of that time, save only as to 'property which is exempt.' Section 70 [sub.] a. The exception, as its words and the context show, is not of property which would or might be exempt if some condition not performed were performed, but of property to which there is under the state law a present right of exemption—one which withdraws the property from levy and sale under judicial process."

In Georgouses v. Gillen, 9 Cir., 1928, 24 F.2d 292, this court, following White v. Stump, supra, held ineffective a homestead declaration filed by the bankrupt after the initiation of the bankruptcy proceeding. The Arizona homestead statute and decisions involved in that case were substantially to the same effect as those of Nevada. The court believed that notwithstanding the difference between the Arizona and Idaho statutes there was no escape from the law as declared in White v. Stump. It thought that the 1910 amendment of § 47 of the Bankruptcy Act, 11 U.S.C.A. § 75 (a provision now incorporated in subdivision c of § 70, 11 U.S.C.A. § 110, sub. c)[1] did not diminish the title vested in the trustee by virtue of § 70, sub. a, but was intended to place the trustee in a position superior to that which he would occupy merely as a constructive grantee of the bankrupt.

Since those two cases were decided the bankruptcy statute has been amended, Act of June 22, 1938, 52 Stat. 879, 11 U.S.C.A. § 110. As the statute now reads the trustee is vested with the title of the bankrupt, as of the date of the filing of the petition, "except insofar as it is to property *which is held to be exempt.*" Plainly, the phrase "which is held to be exempt" has no reference to a specific point of time. As it stands § 70, sub. a(5), 11 U.S.C.A. § 110, sub. a(5), serves as a sort of catch-all descriptive generally of the species of property passing to the trustee on the initiation of the proceeding. The statute has no bearing on the subject of exemptions. The problem as to what property should be held exempt is simply left at large, and its solution must be sought elsewhere in the law. We entertain no doubt that now, as heretofore, the necessary factual basis

---

[1] "The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists; and, as to all other property, the trustee shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a judgment creditor then holding an execution duly returned unsatisfied, whether or not such a creditor actually exists."

The foregoing quotation is from the Chandler Act. The phraseology differs somewhat from that previously contained in § 47.

precedent to the exercise of the right of selection must exist as of the date of bankruptcy; but there is no good reason for believing that under the present law the opportunity to identify or select exempt property is irretrievably cut off as of that date. Consult Clark v. Nirenbaum, 5 Cir., 1925, 8 F.2d 451, where it was held that even under the doctrine of White v. Stump the formal selection of the homestead may be made after bankruptcy. See also In re Bass, Fed.Cas.No.1,091, approved in Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061. We think, more particularly in view of the amendment, that the rule of White v. Stump should not be applied so broadly as this court felt constrained to apply it in Georgouses v. Gillen, supra.

But these considerations aside, the condition of the Nevada law in respect of the wife's right of homestead is such as to differentiate this case from either of the two cases discussed. Section 3360 of the Nevada Compiled Laws reads: "The husband shall have the entire management and control of the community property, with the like absolute power of disposition thereof, except as hereinafter provided, as of his own separate estate; provided, that no deed of conveyance or mortgage of *a homestead as now defined by law, regardless of whether a declaration thereof has been filed or not,* shall be valid for any purpose whatever unless both the husband and wife execute and acknowledge the same * * *." [Emphasis supplied.]

■ This statute, enacted in 1897, long after the passage of the homestead statute, has been said to manifest a legislative policy precluding "the possibility of a wife being divested of the home by the acts of her husband, perpetrated either with a design to defraud her, or through misguided or imprudent business transactions in which she had no part." First National Bank of Ely v. Meyers, 39 Nev. 235, 247, 150 P. 308, 312.[2] The court stated (39 Nev. 245, 150 P. 311) that "the homestead sought to be recognized and protected by the act of 1897 is not the homestead 'provided by law' * * *, but is the homestead de facto, so to speak, created by its being the abiding place of the husband and wife." The facts of that case were that Meyers and his wife had made their home on certain community

property in the town of Ely. Meyers borrowed money from a bank and gave as security a mortgage on the property, executed by himself alone. Later the wife filed a declaration of homestead. The court held that though the homestead had not previously been registered as required by law, the husband's sole conveyance or encumbrance of it could not pass title.

■ Thus, in the situation and for the purposes contemplated by this statute, a de facto homestead right subsists in the wife independently of the filing of a declaration. We think it inescapable that if regard be had for the state law the wife, at least, is not to be surprised into the loss of the right, whether by the husband's voluntary transfer or by his or his creditor's petition in bankruptcy. But, appellant argues, the wife's unperfected right of homestead may be wiped out by the process of levy and sale, as is recognized in First National Bank of Ely v. Meyers, 40 Nev. 284, 161 P. 929, 932; and, since § 70, sub. a(5) vests in the trustee the title to all the bankrupt's property which prior to the filing of the petition "might have been levied upon and sold under judicial process against him," the trustee must be deemed to occupy the position or to possess the title of a purchaser at execution sale.

■ The short answer to the argument is that the statute does not purport to place the trustee in the shoes of an execution purchaser, Cf. Georgouses v. Gillen, supra, 24 F.2d page 293; In re Britannia Mining Co., 7 Cir., 203 F. 450, 453; 11 U.S. C.A. Sec. 110, sub. c. Nor is White v. Stump, supra, authority for the proposition that the trustee is deemed to have the title of such a purchaser. Moreover, if the premise were accepted it would substantially nullify in bankruptcy many exemptions provided for in the state laws. It is common state policy to exempt a limited value or number of articles of personal property of a given class, such for example as two horses, one milk cow, or the like, to be selected by the debtor out of the larger mass of like kind of property when occasion therefor arises. Until the selection is made—and there is often no statutory machinery for making it—the exemption statute is as a matter of practical necessity no impediment to levy and sale; and it appears to be the general view

---

[2] See same case on rehearing, 40 Nev. 284, 161 P. 929.

of the state courts that in the absence of timely selection a sale on execution wipes out the exemption privilege.[3] We are not told how, in cases of provisional exemptions of this character, the right of selection is retained as against a trustee in bankruptcy if the latter is clothed by law with the title of an execution purchaser as of the date of bankruptcy. Yet it is not denied that the privilege of making the selection in such cases remains with the bankrupt and may be exercised pursuant to § 7, sub. a(8) of the Bankruptcy Act, 11 U.S. C.A. § 25, sub. a(8). Consult Clark v. Nirenbaum, supra; In re Bass, supra; Bank of Nez Perce v. Pindel, 9 Cir., 193 F. 917.

■■■ The general exemption law of Nevada, § 8844 Compiled Laws, lists as exempt numerous articles of personal property, not identifiable except through the process of selection. It is significant that subdivision 15 of that statute likewise lists, as among the kind of property which "is" exempt from execution, "the homestead as provided for by law."[4] So far as concerns the bankruptcy law, there is no real difference between these two types of exemptions. Mere seizure of the property does not preclude exercise of the right of selection or designation in either case. As to both types of property the right of selection is lost unless exercised prior to judicial sale. A proper regard for the spirit of the bankruptcy law requires that these humanitarian rights, recognized and protected by the state, be not frittered away by technical refinements or synthetic buildups of unrelated statutory phrases.

■ Appellant argues further that that Nevada statute, § 3315, contemplates only a family exemption, and that a wife who has separated from her husband and is living on the property without children or other dependents is not entitled to file a homestead declaration. The point was not made or considered below. In any event it is out of harmony with the language and spirit of the homestead law.

Affirmed.

DENMAN, Circuit Judge (dissenting).

(A) The court has decided an important question of local law of Nevada with respect to the right of a wife in a homestead prior to a transfer by operation of the Nevada law, similar to the transfer by operation of law on the filing of a petition in bankruptcy, where the wife has taken no steps to create the homestead prior thereto, in conflict with the applicable Nevada decisions to the contrary. Rule 38, U.S.Sup.Ct., 28 U.S.C.A. following section 354.

This is a dissent to the holding of the majority that the transfer by operation of law under § 70, sub. a of the Bankruptcy Act is the same as a voluntary transfer by the husband to some third party and that therefore a homestead exemption is created without the necessity of making and filing a declaration. For this holding the majority relies on a dictum in the decision of First National Bank of Ely v. Meyers, 39 Nev. 235, 150 P. 308.[1] That decision considered the provision concerning the voluntary transfer by the husband of community property as provided in § 3360 of the laws of Nevada. N.C.L.1929. The pertinent portions of the statute read: "The husband shall have the entire management and control of the community property, with the like absolute power of disposition thereof, except as hereinafter provided, as of his own separate estate; provided, that no deed of conveyance or mortgage of a homestead as now defined by law, regardless of whether a declaration thereof has been filed or not, shall be valid for any purpose whatever unless both the husband

---

[3] See discussion of the general subject in 22 American Jurisprudence under the heading "Exemptions," §§ 114 to 140.

[4] This particular subdivision was incorporated in the statute by amendment in 1911.

[1] But two judges participated in this decision. On rehearing one of the judges carefully distinguishes between a transfer by operation of law in an execution sale in a suit by creditors and the mortgaging of the home by a husband, stating "This is but a reannunciation of an old principle. It does not apply to our peculiar statute, because our statute says nothing as to selection or recordation as affecting the rights of the wife as against those of the husband. Recordation may be, and in fact is, necessary to give notice to all the world of the selection of the homestead to exempt it from forced sale under execution. But to exempt it from alienation by one spouse without the consent of the other, in the absence of specific constitutional or statutory provision, why should such be necessary?" First Nat. Bank of Ely v. Meyers, 40 Nev. 284, 297, 161 P. 929, 932.

and wife execute and acknowledge the same as now provided by law for the conveyance of real estate; * * *."

That the majority opinion necessarily holds this identity between the transfer by operation of law under the Bankruptcy Act and the voluntary conveyance by the husband referred to in § 3360, is apparent when we consider that the majority refuses to entertain the principal contention of the appellant trustee and the latest decision of the Nevada supreme court on which his contention is based.

The trustee's contention is that in Nevada the transfer by operation of law on an execution sale is entirely different from the voluntary transfer by the husband, and that the two transactions are governed by entirely different Nevada statutes. These statutes distinguish between the rights, as in bankruptcy, of creditors on a transfer by operation of law, and the rights of the transferee on the voluntary conveyance by the husband. The former rights are determined by § 3315 of the homestead statute, and the latter by an entirely different statute, § 3360, under the Nevada community property laws.

Under no theory could the majority have refused to consider this latest Nevada decision other than that the Bankruptcy Act itself made the transfer of title from the bankrupt to the trustee, by operation of law, identical with a voluntary transfer by the husband prior to bankruptcy.

The case which the majority refuses to consider as revelant to its decision is McGill v. Lewis, Nev., 116 P.2d 581, 583, decided August 30, 1941. In that case there had been a transfer by operation of the Nevada law on an execution sale in a suit brought by creditors against the husband. The wife, prior to the sale, had made a so-called recordation of a document which did not comply with the state statutory requirements of a homestead declaration. The court held that upon such a transfer by operation of law, the purchaser under execution in the suit by the creditors took free and clear of any right of the wife to create a homestead in the property conveyed, unless prior thereto there had been a recordation substantially complying with the homestead statute. This decision limits the "solicitude" of the Nevada law to protect the homestead, on which the majority relies, as follows: "This court agrees with appellants that our constitutional and statutory provisions relating to homesteads should be liberally construed, but the rule of liberal construction can be applied only where there is a *substantial compliance* with those provisions." (Emphasis supplied). McGill v. Lewis, supra, 116 P.2d 583. In so holding the Nevada court reaffirmed its decision in Lachman v. Walker, 15 Nev. 422, where, as here, the homestead recordation was made after a transfer by operation of law.

Also, in so holding, the Nevada supreme court distinguishes the transfer by operation of law in a suit by creditors, from a voluntary transfer by the husband in mortgaging property, in a consideration of the case of First National Bank of Ely v. Meyers, supra, which is made the basis of the majority opinion, as follows: "To secure the benefits of the constitutional and statutory provisions exempting the homestead from forced sale under process of law (with certain exceptions not here pertinent), it is necessary that a declaration of homestead be filed for record as provided in § 3315, N.C.L.1929. Lachman v. Walker, 15 Nev. 422. The case last cited was not overruled in First National Bank of Ely v. Meyers, 39 Nev. 235, 150 P. 308; Id., 40 Nev. 284, 161 P. 929. In that case, it is true, no declaration for homestead was filed for record but the question before the court was not as to the exemption of the homestead from forced sale; it was whether the husband alone could mortgage the homestead occupied by him and his family. * * *" McGill v. Lewis, supra, 116 P.2d 582, 583.

Since the trustee stands in the place of the creditors and the bankrupt, what White v. Stump, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301, decides is that the creditors have had transferred to them by operation of law on the filing of the petition in bankruptcy, exactly what would be acquired by operation of law in Nevada on an execution sale in a suit by the creditors against the bankrupt prior to the filing of his petition. That is to say, a title free and clear of any right of the wife thereafter to create a homestead in the property so transferred. This is the holding made by the referee in bankruptcy which was overruled by the district court. In my opinion, the referee's holding is correct and the trustee should have prevailed on his appeal here.

(B) The court has decided an important federal question of first impression, to-wit, an amendment to Bankruptcy Law, in con-

flict with White v. Stump, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301, and the applicable decisions of the United States Supreme Court. Rule 38, U.S.Sup.Ct., 28 U.S.C.A. following section 354.

This dissent is also to the holding that the Act of June 22, 1938, in amending the phrase "except in so far as it is to property which is exempt," to read "to property which is held to be exempt,"[2] change the rule of White v. Stump, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301,[3] and is intended to permit the creation of an exemption after the filing of the petition in bankruptcy. Certainly it would be unusual for Congress to cause such a profound change in the many years of administration of the Act by such a three-word alteration in verbiage, without altering or referring to all the several other provisions summarized in White v. Stump, making the date of filing of the petition "the point of time which is to separate the old situation from the new in the bankrupt's affairs." Id., 266 U.S. 313, 45 S.Ct. 104, 69 L.Ed. 301.

The Act of 1938 makes a general clarification of the language of the Bankruptcy Act in many respects. In all there were more than 64 amendatory provisions. So far as concerns the original phrase excepting "property which is exempt," it did not fully describe the processes of the Act. Under § 7 of the Act of 1898, 11 U.S.C.A. § 25, on filing his petition in voluntary bankruptcy, or ten days thereafter in involuntary proceedings, the bankrupt is required to file his "claim for such exemptions as he may be entitled to." This claim is not one which "is exempt" merely by its filing with the petition. It has to be adjudicated as a proper exemption in the bankruptcy proceeding,—that is, it has thereafter to be "held to be exempt." In making such a general overhauling of the bankruptcy statute this seems the rational explanation of the amendatory phrase in question.

The majority opinion holds that in the words "held to be exempt," Congress had two entirely different purposes. One was to "ameliorate" the position of the wife, a third person, claiming a homestead. In this connection it should be noted that in White v. Stump, supra, the Supreme Court overruled the holding of this court in Re Stump, 9 Cir., 284 F. 199, 203, that the wife

was such a third person. The Supreme Court treats her claim as no different from her bankrupt husband.

To impute to the words "held to be exempt" such a creation of the wife's rights as a third party seems too extraordinarily obscure and roundabout a method for Congress to pursue to give it rational credence.

Here the attempted creation of the homestead by recording the claim was 27 days after the filing of the petition and adjudication. In White v. Stump it was 60 days thereafter. However, under the majority opinion the claimant could wait at his will to create his exemption. Bankruptcy estates often are months, sometimes years, in the course of administration. Finally, the creditors' claims being determined, all that is necessary for distribution is the sale of the estate's property. On the principle of the majority opinion, on the morning of the sale the homestead claim may be made by the wife or created by the statutory recordation of the husband. It does not seem a reasonable contention that the amendment of 1938 was intended to permit the creation by either the debtor husband or the third party wife of an exemption years after the filing of the petition. All the adjustments and settlements arrived at in the long proceeding well may be frustrated.

A second reason of the majority for treating the amendatory phrase as warranting the creation of an exemption after the filing of the petition is equally untenable. It is that the holding of White v. Stump that the exemption must exist when the petition is filed, prevents the selection of barber's tools, farm implements, milch cows, lawyers' libraries, and the like, permitted by various exemption statutes of the several states. This is an astonishing discovery to make in 1938, after forty years of administration of the act in which there must have been scores of thousands of such exemptions claimed and allowed.

The fact is that unlike the futile claim of an unrecorded homestead in Nevada, these other statutory exemptions actually exist as to the title to the farm implements, etc., when, by operation of law, they are transferred to the trustee on the filing of the bankrupt's petition. Then, as at the time of the transfer by

---

[2] § 70, sub. a (5), 11 U.S.C.A. § 110, sub. a (5).

[3] Reaffirmed in United States v. Marxen, 307 U.S. 200, 207, 59 S.Ct. 811, 83 L.Ed. 1222, and followed by this court in Coopman v. Citizens State Bank of Omak, 9 Cir., 83 F.2d 815.

operation of law in an execution sale, the debtor files his designation of the items in the group exempted with the petition transferring his property by operation of law. The later designation in an involuntary bankruptcy relates back, as do his schedules, to the date of filing the creditors' petition.

In Nevada, Idaho and Arizona the judgment debtor must make this designation at or before the execution sale or the exemption is waived. Hammersmith v. Avery, 18 Nev. 225, 229, 2 P. 55; Idaho Code 8-202; Wilson v. Lowry, 5 Ariz. 335, 52 P. 777.

It would be a vain act to amend the bankruptcy statute by such a phrase as "which is held to be exempt" to give the debtor the right to designate the items of exempt property, when that right is already provided in the Act as it stood before the amendment. The obvious reason for that amendment was that the former phraseology failed to recognize that the mere filing of a claim of exemption of property does not make that property something "which is exempt." As stated, the claim of property must be adjudicated whereby the property there becomes "held" exempt.

The decision of the district court should be reversed.