### In re DUDLEY.
### No. 44706.

District Court, S. D. California,
Central Division.
Aug. 4, 1947.

Cobb & Utley, of Los Angeles, Cal., for bankrupt.

Craig & Weller, of Los Angeles, Cal., for trustee.

YANKWICH, District Judge.

The Bankruptcy Act of 1938 recognizes exemptions to which bankrupts are entitled by state laws and requires them to be claimed.[1] The duty of the Trustee to set apart the exempt property is also prescribed

---

[51] Neufield v. United States, supra.

[1] Bankruptcy Act, §§ 6, 7, sub. a(8), 11 U.S.C.A. §§ 24, 25, sub. a (8).

by the Act.[2] The effect of these provisions is that the right to exemptions, their nature and amount, are governed strictly by state laws, and the decisions of state courts interpreting them.[3] The law of California is very generous in the matter of exemptions. The exemptions are varied and numerous.[4] Exemption statutes are not only liberally construed, but "are generally subject to the most liberal construction which the courts can possibly give them."[5] The courts of California have been most liberal in interpreting such statutes. They have taken the view that their object is to put a protective guard around the debtor's property for his protection and that of his family. And because the exemption flows from the nature of the property and not from any claim of exemption[6], the courts have protected it against attachment and execution[7], against a claim for unpaid alimony[8], and even against a waiver in advance by the debtor.[9]

The problem involved in this review must be approached in the light of these facts. The petitioner was adjudicated a bankrupt on January 11, 1947, on a voluntary petition. In his schedules, he claimed as exempt ten shares of stock in the Hollywood Building & Loan Association, of the value of One Thousand Dollars ($1000.00), under the Bankruptcy Act and the California Statute.[10] On February 20, 1947, the Trustee filed a report of exempt property in which he denied the exemption. The bankrupt filed objections to the report. After a hearing, the Referee, on March 31, 1947, made an Order approving the Trustee's re- po    . Factually, the conclusion reached by th   Referee was based on the fact that the stock was purchased about a week before the adjudication, at a time when the bankrupt was "heavily in debt and clearly insolvent". This is a petition to review the Order. The applicable California Code of Civil Procedure section, which is very brief, exempts: . "690.21. (Same: Shares in Building and Loan Association). Shares of stock in any building and loan association to the value of one thousand dollars."

Legally, the Referee grounded his decision on an opinion of one of our former Referees, Earl E. Moss, interpreting this section.[11] In it, Referee Moss held that a purchase of such stock while insolvent, immediately prior to bankruptcy, was a fraud on the creditors.

I do not have before me the evidence upon which the Trustee in that case based his denial of exemption. The opinion of the Referee would seem to indicate that the purchase was a part of a scheme on the part of the bankrupt to divert the sum of $4000, which he received shortly before he signed his petition, and of which $1000 was applied to the purchase of the stock. Counsel for the Trustee in the present case base their position entirely,—as did the Referee,—upon this opinion. In fact, their brief merely urges us to read the cases upon which Referee Moss bases his decision. We have done so. And our conclusion is that whatever particular facts may have justified the Trustee and, later, the Referee in finding that a fraudulent scheme

[2] Bankruptcy Act, § 47, sub. a(6), 11 U.S.C.A. § 75, sub. a(6).

[3] Bankruptcy Act, § 6, 11 U.S.C.A. § 24; 8 C.J.S. Bankruptcy, § 494; Holden v. Stratton, 1905, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018; White v. Stump, 1924, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301; Clark v. Nirenbaum et al., 5 Cir., 1925, 8 F.2d 451; In re Miller, 8 Cir., 1934, 74 F.2d 86; Turner v. Bovee, 9 Cir., 1937, 92 F.2d 791; Doethlaff v. Penn. Mutual Life Ins. Co., 6 Cir., 1941, 117 F.2d 582.

[4] California Code of Civil Procedure, §§ 690, 690.1 to 690.23 inclusive.

[5] Dean v. Shephard, 9 Cir., 1928, 26 F.2d 460, 461; and see, Hills v. Joseph, 9 Cir., 1916, 229 F. 865; see also my opinions in Re Fox, D.C.Cal., 1936, 16 F.Supp. 320; In re Sterling, D.C.Cal., 1937, 20 F.Supp. 924.

[6] Williamson v. Monroe, 1917, 174 Cal. 462, 163 P. 662.

[7] North British & Mercantile Co. v. Ingalls, 1930, 109 Cal.App. 147, 161, 292 P. 975; Yager v. Yager, 1936, 7 Cal.2d 213, 60 P.2d 422, 106 A.L.R. 664; Montgomery v. Bullock, 1938, 11 Cal.2d 58, 77 P.2d 846.

[8] In re Smallbone, 1940, 16 Cal.2d 532, 106 P.2d 873, 131 A.L.R. 222.

[9] Industrial Loan & Investment Co. of San Francisco v. Superior Court, 1922, 189 Cal. 546, 209 P. 360.

[10] Bankruptcy Act of 1938, § 6, 11 U.S.C.A. § 24; California Code of Civil Procedure, § 690.21.

[11] In re Gorman, 1929, 14 A.B.R.,N. S., 145.

was in effect at the time of this transfer, the opinion, insofar as it holds that the acquisition of such exempt property with non-exempt funds by an insolvent debtor is, ipso facto, fraudulent, is unsound and should not be followed. For, if it were, the entire law of exemptions would be destroyed, and every Trustee could invalidate any acquisition of exempt property within the four-months period prior to adjudication.[12] It is to be borne in mind that our Circuit Court of Appeals has held that the effect of the exemption of property under state statutes is that the property does not pass to the trustee and is "not subject to administration by the bankruptcy court."[13]

An analysis of the opinion on which the claim of the Trustee is based leads to the conclusion that the Referee relied solely on cases in which the courts were satisfied that the acquisition of exempt property was a part of a scheme to divert non-exempt funds to exempt property, under circumstances which constituted actual fraud.[14] But cases in which the sole question involved was whether mere diversion by an insolvent debtor, *without actual fraud,* led to different conclusions. We find, for instance, that a chattel mortgage given to secure a creditor within the four-months period, and which, under the laws of California, was exempt from execution, was sustained against the claim of the Trustee.[15] More recently, our Circuit Court of Appeals protected a homestead against the claim of fraud of the Trustee.[16] In that case, the court held that the insolvency of the debtor at the time was immaterial. Among the cases it followed, was a leading California case,—Yager v. Yager.[17] That

case has a very terse statement of the approach of the law when it deals with homestead or other exempt property which the law seeks to protect against creditors. And it determines unequivocally that the doctrine applicable to fraudulent conveyances does not apply to exemptions of this type. We quote:

"A declaration of homestead may be filed during the pendency of litigation, at any time before the judgment has become a lien upon the property. It may be filed subsequent to the rendition of the judgment. Beaton v. Reid, 111 Cal. 484, 44 P. 167; Simonson v. Burr, 121 Cal. 582, 54 P. 87; Eby v. Foster, 61 Cal. 282. It will defeat an existing attachment lien. Lucci v. United Credit & Collection Co., 220 Cal. 492, 31 P.2d 369; Jacobson v. Pope & Talbot, 214 Cal. 758, 7 P.2d 1017. It may be filed after levy of execution, and, provided there is not a valid and subsisting judgment lien on the property, it is not subject to execution sale except upon proceedings had under sections 1245–1259, Civil Code, for reaching the excess in value above the homestead exemption of $5,000. Beaton v. Reid, supra. The very purpose of the homestead law is to protect the property from existing debts. Gray v. Brunold, 140 Cal. 615, 621, 74 P. 303. *The doctrine bearing on conveyances to delay and defraud creditors has no application to the creation of a homestead.*" Lucci v. United Credit & Collection Co., supra; Simonson v. Burr, supra; 13 Cal.Jur. 477)" (Emphasis added.)

Remington states: "Whether non-exempt property can be converted into exempt property on the eve of bankruptcy must be determined by local law".[18]

---

[12] Bankruptcy Act of 1938, § 3, sub. b, 11 U.S.C.A. § 21, sub. b; and see my recent opinion in Re Rand Mining Co., 1947, D.C.Cal., 71 F.Supp. 724.

[13] 8 C.J.S., Bankruptcy, § 504; Lockwood v. Exchange Bank, 1903, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061; Baumbaugh v. Los Angeles Morris Plant Co., 9 Cir., 1929, 30 F.2d 816; and see, Ingram v. Wilson, 8 Cir., 1903, 125 F. 913; In re Bitner, 7 Cir., 1918, 255 F. 48; Clark v. Nirenbaum, 5 Cir., 1925, 8 F.2d 451; Duffy v. Tegeler, 8 Cir., 1927, 19 F.2d 305; Turner v. Bovee, 9 Cir., 1937, 92 F.2d 791; Myers v. Matley, 9 Cir., 1942, 130 F.2d 775;

Stein v. Bostian, 8 Cir., 1943, 133 F. 2d 586, 589; Negin v. Salomon, 2 Cir., 1945, 151 F.2d 112, 161 A.L.R. 1005.

[14] In re Gerber, 9 Cir., 1911, 186 F. 693; Kangas v. Robie, 8 Cir., 1920, 264 F. 92, are illustrative of the cases on which the German opinion is based.

[15] Baumbaugh v. Los Angeles Morris Plant, 9 Cir.1929, 30 F.2d 816.

[16] Turnbeaugh v. Santos, 9 Cir., 1944, 146 F.2d 168.

[17] 7 Cal.2d 213, at page 217, 60 P. 2d 422, 424, 106 A.L.R. 664.

[18] 3 Remington on Bankruptcy, 4th Ed., Section 1278.

And where the exemption by state law is absolute and without any limitation as to time, or other restrictive conditions, the bankruptcy court, bound as it is to follow it, will apply the same rule, regardless of any provisions in the bankruptcy law relating to preferences.

As far back as 1903, our Circuit Court of Appeals determined that money used in the purchase of property while insolvent and on which a declaration of homestead was filed *between the date on which a petition for involuntary bankruptcy was filed against him and the date of adjudication* was exempt in bankruptcy. We quote the words of Circuit Judge Gilbert:

"The bankruptcy act provides that the allowance of exemption prescribed by state laws shall not be affected. The Constitution and statutes of California, therefore, as construed by the decisions of the courts of that state, must, independently of other authority, control our decision in this case. In Randall v. Buffington, supra [10 Cal. 491], it was held that there is no rule of the law which prevents a debtor in insolvent circumstances from using the money which he has to pay off a mortgage on his homestead. In Fitzell v. Leaky, supra [72 Cal. 477, 14 P. 198], the court said:

" 'It has never been held that a homestead was invalidated because *the declarant was in debt, or declared the homestead to protect it from existing debts.* * * * The law authorizes a debtor to erect a barrier around the home, over which the sheriff, although armed with final processes under such a judgment, cannot pass. With the policy of the law or the abstract morality of a transaction, we have nothing to do. *The doctrine bearing upon conveyances made to hinder, delay, or defraud creditors has no application to the creation of a homestead.' "[19]* (Emphasis added.)

Other courts have made similar rulings.

Thus, the Eighth Circuit Court of Appeals has held that, *in the absence of extrinsic fraud,* the conversion by an insolvent of non-exempt property into exempt property is permitted.[20]

Quite recently, the Sixth Circuit Court of Appeals, under a state statute exempting the proceeds of a life insurance policy, ruled that payments of premiums on such life insurance, while insolvent, should be respected in bankruptcy court.[21]

In a case which came before me in 1937, and in which an adjudication was made *on November 26, 1935,* I sustained a declaration of homestead recorded by the bankrupt on *October 14, 1935,* on real property acquired by him and his wife and owned by them in joint tenancy. I ruled that, while the homestead declaration was ineffective as to the interest of the wife because of the nature of joint tenancy under the law of California, nevertheless, it was "valid to the extent of his own interest in the property."[22] So doing, I held that the Referee was right in setting aside the property as exempt and in sustaining the objections of the bankrupt to the Trustee's report of exempt property which had denied the exemption.

---

[19] In re Wilson, 9 Cir., 1903, 123 F. 20, 22.

[20] Forsberg v. Security State Bank, 8 Cir., 1926, 15 F.2d 499, 49 A.L.R. 913. We are not impressed by the manner in which the Referee in the Gorman case attempts to distinguish this case. Nor can we follow the "extra-judicial" reasonings which counsel for the Trustee in this case urges as grounds for disregarding it, based on his residence in the state under the law of which the case arose. *The case needs no gloss.* Its teaching is plain enough. It says that the conversion by an insolvent of non-exempt property into exempt, *in the absence of actual fraud,* does not warrant a denial of the exemption in bankruptcy.

[21] Doethlaff v. Penn Mutual Life Insurance Co., 6 Cir., 1941, 117 F.2d 582. Compare, Schwartz v. Coen, 2 Cir., 1942, 131 F.2d 879. An examination of the cases cited by Remington under the section to which we have just referred in the text (see Footnote 18) brings out the significant fact that, except in states where restrictions are placed on certain exemptions, the only opinion supporting the proposition that the transfer of exempt property, *in the absence of actual fraud,* is, by the very fact, invalid is the Referee's opinion which we are discussing.

[22] In re Sterling, D.C.Cal., 1937, 20 F.Supp. 924, 927.

The rulings in these cases are logical. They flow directly from the nature of the exemptions prescribed by the state codes. If the mere acquisition of exempt property while insolvent were sufficient ground to destroy the exemption, the acquisition of *any* such property, within the four-months' period, could be nullified, and the protection which the state law gives to a debtor, *even against the solemn money judgment of a court,* would be denied him against creditors in bankruptcy. An anomalous condition would thus be created. A judgment creditor or a wife who has an alimony decree has a stronger claim on a debtor than a creditor who has advanced him money in a business venture which failed. And if the benefit of an exemption can be claimed against such creditors, it *should not be denied* as to the ordinary creditor in bankruptcy. To do otherwise would destroy the exemption altogether and would result in the bankruptcy court substituting its own judgment as to what should be exempt for the solemn statutory enactments of the state of the bankrupt's residence, which, as fully appears from the foregoing discussion[23], are binding on us.

The matter is well put by the Circuit Court of Appeals for the Eighth Circuit in a leading case[24]:

"There is no claim of fraud in the severance of these sums of money into individual ownership, except that it took from partnership creditors a fund to which they could have resorted if it had remained partnership assets until placed in the custody of the law, and placed it among the individual assets, where it was subject to a claim of exemption, and that this was done for that purpose, and when it was known to the partners that they and the firm were insolvent and in anticipation of early proceedings in bankruptcy. *It is well settled that it is not a fraudulent act by an individual who knows he is insolvent to convert a part of his property which is not exempt into property which is exempt for the purpose of claiming his exemptions therein, and of thereby placing it out of the reach of his*

*creditors.* Flask v. Tindall, 39 Ark. 571; In re Irvin, 8 Cir., 120 F. 733, 57 C.C.A. 147; Huenergardt v. John S. Brittain Dry Goods Co., 8 Cir., 116 F. 31, 53 C.C.A. 505; First National Bank [of Humboldt, Neb.], v. Glass, 8 Cir., 79 F. 706, 25 C.C.A. 151; In re Wilson, 9 Cir., 123 F. 20, 59 C.C.A. 100; In re Thompson, D.C., 140 F. 257; O'Donnell v. Segar, 25 Mich. 367; Randall v. Buffington, 10 Cal. 491; Cipperly v. Rhodes, 53 Ill. 346; Meigs v. Dibble, 73 Mich. 101, 40 N.W. 935; Jacoby v. Parkland Distilling Co., 41 Minn. 227, 43 N.W. 52; Palmer v. Hawes, 80 Wis. 474, 50 N.W. 341; Thomp. on Homesteads & Ex. §§ 305-309.

"This has become an established principle, because the statutes granting exemptions have made no such exceptions, and because the policy of such statutes is to favor the debtors, at the expense of the creditors, in the limited amounts allowed to them, *by preventing the forced loss of the home and of the necessities of subsistence, and because such statutes are construed liberally in favor of the exemption.*" (Emphasis added.)

In sum: the California statute places no time limit on the exemption of building and loan stock to the value of one thousand dollars. It does not say *when* building and loan stock must be acquired in order to be exempt.[25] Nor does it say that the person *shall be solvent* at the time of acquisition. To sustain the Referee in this case, we would have to impose a time limit and make solvency a condition precedent to exemption. This would mean reading into the state statute restrictions *which are not there.* And this we cannot and should not do. And, *as there is no showing of actual fraud,* the stock is immune against the creditors and never passed to the trustee.

The Order of the Referee, dated March 31, 1937, approving the Trustee's report of exempt property is, therefore, reversed with direction to enter a proper order setting apart the stock as exempt.

[23] See cases in Footnotes 3 and 19.

[24] Crawford v. Sternberg, 8 Cir., 1915, 220 F. 73, 76.

[25] Compare Myers v. Matley, 9 Cir., 1942, 130 F.2d 775, 777–778; Myers v. Matley, 1943, 318 U.S. 622, 625–628, 63 S.Ct. 780, 87 L.Ed. 1043, 145 A.L.R. 498.